## CARSON v. JERSEY CITY INSURANCE COMPANY.

1. Where the policy in express terms refers to the application or other papers connected with the risk, and adopts them as part of the contract of insurance, they become part of the policy, and the statements therein relative to the situation, use and character of the risk are warranties on the part of the assured.

2. Conditions in a policy which create forfeitures, will be construed most strongly against the insurer, and will never be extended beyond the strict words of the policy.

3. A policy issued on a written application for insurance, in which one of the questions propounded is left unanswered, is a waiver of the right to the information called for by such a question, and the contract of insurance will be considered as based on answers given to inquiries to which the applicant has responded.

4. An application for insurance on a mill property contained the following questions:  (18th.) *Ownership*—Is the mill owned and operated by the applicant?  *Ans.*—Yes, by the applicant and his son. Is any other person interested in the property; if so, state the interest. *Ans.*—None. (19th.) *Encumbrances*—Is there any encumbrance on the property ?  *Ans.*—Expects to borrow $2500 and use the policy as collateral. If mortgaged, state the amount?  To this question there was no answer.  The applicant had title to the premises in fee simple, but they were subject to four mortgages.  The policy was written in, "Loss, if any, payable to Israel Baldwin, mortgagee." Baldwin was one of the four mortgagees  *Held*—

1. That the first of these inquiries had reference to the state of the

legal title, and that the subject of encumbrances was dealt with exclusively in the inquiry contained in the other subdivision.

2. That the applicant being the owner in fee of the legal estate, the mortgages were no breach of the warranty with respect to the ownership of the property.

3. That the policy having been issued upon an application in which no answer had been given to the inquiry as to encumbrances, there was no warranty on that subject.

5. The policy contained a stipulation "that the insurer should not be liable, by virtue of this policy or any renewal thereof, for any loss that may occur before the premium had actually been paid to this company." The policy was sent to P., an agent, for delivery, whose duty it was to deliver the policy and receive the premium. The agent testified that the rule of the company was for the agent to report once a month; that he always held the funds for a month and sometimes longer. His commissions were deducted from the premiums when he made his remittances. The agent delivered the policy and took the note of the assured with an endorser, payable at a bank, for the premium. He had the note discounted and the proceeds placed to his credit in the bank before the loss occurred. *Held—*

1. That a condition in a policy "that if any broker or any other person than the assured has procured this policy he shall be deemed the agent of the assured and not of the company," did not debar the company of the power to appoint agents and clothe them with such authority—general, special or limited—as might be advisable; and the delegation of such authority will carry with it such powers and consequences as are incident to the relation of principal and agent within the scope of the authority conferred.

2. That P. was constituted the agent of the company for the purpose of receiving premiums on policies negotiated by him, and that payment of such premiums to him was payment to the company; and

3. That the premium on this policy was paid when the note was discounted and the proceeds passed to P.'s credit in the bank.

6. A stipulation in a policy that "no agent of this company is authorized in any respect to change the terms and conditions of this policy, and they shall neither be changed nor waived except in writing, signed by the president or secretary of the company," applies only to those conditions and provisions in the policy which relate to the formation and continuance of the contract of insurance and are essential to the binding force of the contract while it is running, and does not apply to those conditions which are to be performed after the loss has occurred in order to enable the assured to sue upon his contract. After the loss has happened, conditions in the policy with respect to notice of loss and preliminary proofs may be waived by parol, though the policy contain such a stipulation as is above referred to.

7. A condition providing that "all fraud or attempt at fraud, by false swearing or otherwise, shall cause a forfeiture of all claim under the policy," is available as a defence only when it appears that the assured knowingly and intentionally swore falsely, or said or did that which is claimed to be fraudulent. Mere mistake in stating facts, or an over-valuation, is not sufficient to sustain the defence.

On case certified from Mercer Circuit.

Argued at June Term, 1881, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the plaintiff, *M. Beasley, Jr.*, and *A. G. Richey.*

For the defendants, *F. McGee* and *J. D. Bedle.*

The opinion of the court was delivered by

DEPUE, J.    The suit was tried at the Circuit until the evidence was in, and then the trial was, by consent of counsel, suspended, that questions of law might be heard before the Supreme Court.

The premises insured, consisted of a flouring mill, engine and machinery, situate in the county of Mercer.    The insurance was negotiated with Thomas C. Pearce, an agent of the company, residing at Hightstown, in said county.    The policy bears date January 8th, 1880.    In it is written the direction, "Loss, if any, payable to Israel Baldwin, mortgagee."    The fire occurred February 15th, 1880.

The defence was made exclusively on the ground of non-compliance with the conditions of insurance.    When the testimony for the defence was in, the plaintiff offered evidence competent to meet a defence founded on a fraudulent concealment or suppression of the truth in regard to incumbrances on the property, and thereupon the defendant's counsel stated that they did not rely on fraudulent misrepresentation, or fraudulent concealment, and disclaimed any imputation of actual fraud in the application, and put themselves upon a breach of warranty and non-compliance with the conditions

of insurance. This disclaimer has simplified very much the examination of the case.

The conditions of insurance are contained in the body of the policy. By the first of them, it is stipulated that if an application, survey, plan or description is referred to in the policy, it shall be considered a part of the contract and a warranty by the assured. The policy was issued upon an application signed by the applicant, which is referred to in the policy, in these words, viz.: "For a more particular description refeì ence is had to the application and survey No. 118,031, filed with this company, which is a warranty on the part of the assured, and is hereby made a part of this policy."

Where the policy in express terms refers to the application or other papers connected with the risk, and adopts them as part of the contract of insurance, they become part of the policy; and the statements therein relative to the situation, use or character of the property are warranties on the part of the assured, and the validity of the contract of insurance depends upon the truth and fulfilment of the warranties and conditions therein expressed. *Wood on Ins.*, § 137; *Jennings* v. *Chenango County Ins. Co.*, 2 *Denio* 75; *Sheldon* v. *Hartford Fire Ins. Co.*, 22 *Conn.* 235; *First National Bank* v. *Ins. Co.*, 50 *N. Y.* 45; *Dewees* v. *Manhattan Ins. Co.*, 5 *Vroom* 244. I consider the incorporation of the application for insurance into this policy so as to make it part of the contract of insurance, too clear to require discussion.

*First.* The only portion of the defence which is rested on matters contained in the application for insurance, is that which relates to the ownership of, and encumbrances upon, the premises, embraced in the 18th and 19th subdivisions of the application, which are as follows: "(18.) *Ownership.*—Is the mill owned and operated by the applicant? *Ans.*—Yes, by the applicant and his son. Is any other person interested in the property; if so, state the interest? *Ans.*—None. (19.) *Encumbrance.*—Is there any encumbrance on the property? *Ans.*—Expects to borrow $2500, and use the policy as a col-

lateral. If mortgaged, state the amount?" To this question there is no answer.

It is manifest from the classification in these two subdivisions, and the inquiries specially propounded under each head, that, in the former, ownership and interest had reference to the state of the legal title, and that the subject of encumbrances was dealt with exclusively in the latter subdivision.

A warranty in a policy of insurance excludes all argument in regard to its reasonableness or the probable intent of the parties. If the policy contains a condition which in law amounts to a warranty on the part of the assured, he can derive no benefit from the policy unless the condition has been literally performed. And it is immaterial to what cause non-compliance is attributable; for, if it be not in fact complied with, the assured will forfeit all his rights under the policy unless the forfeiture has been waived by the insurer. *Marshall on Ins.* 251; *Wood* v. *Hartford Ins. Co.*, 13 *Conn.* 544; *Dewees* v. *Manhattan Ins. Co.*, 5 *Vroom* 244. Hence, it has become a settled rule in the construction of contracts of insurance that policies of insurance will be liberally construed to uphold the contract, and conditions contained in them which create forfeitures will be construed most strongly against the insurer, and will never be extended beyond the strict words of the policy. *Palmer* v. *Warren Ins. Co.*, 1 *Story* 360; *Stone* v. *U. S. Casualty Ins. Co.*, 5 *Vroom* 375; *State Ins. Co.* v. *Maackins*, 9 *Id.* 564; *Wood on Ins.*, § 57. " In enforcing forfeitures, the court should never search for that construction of language which must produce a forfeiture, when it will bear another reasonable construction which will not produce such results." Walker, J., in *Hartford Ins. Co.* v. *Walsh*, 54 *Ill.* 164.

If the assured has an insurable interest in the property, insurance of it as his property, or by him as owner, will be valid though his title be a qualified or a mere equitable title (*Franklin Fire Ins. Co.* v. *Martin*, 11 *Vroom* 568; *Ins. Co.* v. *Woodruff.* 2 *Dutcher* 541); and he is not bound to state the

nature or particulars of his title unless expressly required to do so by the provisions of the policy. *May on Ins.* 285.

The production of the plaintiff's title showed that he was the owner of the entire legal estate in fee simple. A mortgagor is deemed seized of the lands against all the world except the mortgagee. *Thompson* v. *Boyd*, 1 *Zab.* 58. In this state the title of the mortgagee is only a title *sub modo ;* and in law as well as in common parlance, the mortgage is considered as a mere security for the debt—an encumbrance on the legal title of the mortgagor. *Kircher* v. *Schalk,* 10 *Vroom* 335, 337. A mortgage upon property insured is not a violation of a condition against a sale, conveyance, alienation or change of title. *Commercial Ins. Co.* v. *Spankneble,* 52 *Ill.* 53. Nor is it within a prohibition against any change in the title or possession of the property, whether by sale, transfer or conveyance. *Hartford Ins. Co.* v. *Walsh,* 54 *Ill.* 164. A mortgage is not such an alienation of real or personal property as will avoid the policy. *Jackson* v. *Mass. Ins. Co.,* 23 *Pick.* 418; *Rice* v. *Tower,* 1 *Gray* 426; *Conover* v. *Mutual Ins. Co.,* 3 *Denio* 254. The cases of *Allen* v. *Charlestown Ins. Co.,* 5 *Gray* 384, and *Franklin Ins. Co.* v. *Vaughan,* 92 *U. S.* 516, illustrate the strictness of construction applied to such conditions when they are invoked to work a forfeiture of the contract.

In *Ins. Co.* v. *Huron,* 95 *U. S.* 242, the owner of the fee, to whom was issued a policy containing a condition identical with the fourth condition in this policy with respect to the interest of the assured being "other than the entire, unconditional and sole ownership of the property for the use and benefit of the assured," was held entitled to recover on his policy, although at the time it was issued there was an outstanding lease for years to a third party, which fact was neither represented to the company nor expressed in the policy.

I think there was no breach of the warranty expressed in the eighteenth subdivision of the application, which relates to the ownership of the land.

VOL. XIV.                    U

The defence under subdivision 19 in the application, stands on a different ground. The premises were then subject to four mortgages—one to Hutchinson, dated April 6th, 1847, for $1500; another to Cubberly, dated April 1st, 1867, for $1000; the third to Taylor, dated March 31st, 1877; the fourth to Baldwin, dated December 30th, 1879, for $2100. If the applicant had falsely answered the inquiries propounded with respect to encumbrances, the policy would be avoided for a breach of a condition of insurance. But he studiously refrained from making any answers to the inquiry on the subject. The paper was incomplete in that respect.

The application was prepared by Pearce and signed by the applicant. It was then transmitted to the company, and the policy was issued directly from the company's office, upon the application in its uncompleted condition. When a policy is issued on a written application for insurance, and any of the questions are left unanswered, the objection must be made before the policy is issued. A policy issued upon such an application is a waiver of the right to the information called for by the inquiry unanswered, and the contract of insurance will be considered as based only on the answers given to inquiries to which the applicant has responded. If the insurer issues a policy upon an uncompleted application for the insurance, he cannot afterwards avoid the policy on the ground that the answers were not full. *Wood on Ins.*, §§ 151, 496; *May on Ins.*, § 166; *Liberty Hall Association* v. *Housatonic Ins. Co.*, 7 *Gray* 261; *Hall* v. *People's Ins. Co.*, 6 *Id.* 185; *Dohn* v. *Farmers' Ins. Co.*, 5 *Lansing* 275; *Commonwealth* v. *Hide and Leather Ins. Co.*, 112 *Mass.* 139.

The plaintiff at the trial, in order to meet a defence that the information with regard to encumbrances was fraudulently withheld, offered to show that Pearce, the agent of the company, filled up the application, and that the different encumbrances on the property were spoken of between him and Pearce before the application was filled up, and that therefore there was no omission to make known the existence of the encumbrances. Upon such a defence the evidence proffered was

competent. *Franklin Fire Ins. Co.* v. *Martin,* 11 *Vroom* 568, 574, and cases cited ; *Ins. Co.* v. *Woodruff,* 2 *Dutcher* 541, 552 ; *Dodge County Ins. Co.* v. *Rogers,* 12 *Wis.* 337. The testimony was objected to, and on a disclaimer by the defendant's counsel of the defence of a fraudulent misrepresentation or fraudulent concealment, the evidence was withdrawn. The defence was at the trial put solely on a breach of warranty. It is therefore sufficient to say that we do not find that the applicant entered into any contract of warranty on this subject.

*Second.* The policy was executed at the company's office in Jersey City, and sent to Pearce for delivery. He delivered it to Baldwin within a week from the time it was issued. One of the conditions of insurance is that the company "shall not be liable, by virtue of this policy or any renewal thereof, for any loss that may occur before the premium has actually been paid to this company." Another condition is that "no agent of this company is authorized in any respect to change the terms and conditions of this policy, and they shall neither be changed nor waived except in writing signed by the president or secretary of the company."

When the policy was delivered, Pearce took a note for the premiums on this and other policies on the same premises, delivered at the same time, and issued by other companies. In *Basch* v. *Humboldt Ins. Co.,* 6 *Vroom* 429, it was held, upon a policy containing the same condition with respect to the prepayment of the premium, which also contained an acknowledgment of the receipt of the premium, that the company was, on the delivery of the policy by an agent, estopped from setting up the non-payment of the premium. This policy contains no formal acknowledgment of the receipt of the premium. It recites that the company, "in consideration of $15, and the conditions and agreements herein contained, doth insure," &c. It is not proposed to consider whether in legal effect there is any difference between these two forms of policies, where the policy has been delivered by an agent authorized to deliver it and receive the premium, if such agent

has delivered the policy unconditionally, and has agreed to credit the assured and has made himself a debtor for it to the company. See *Hallock* v. *Ins. Co.*, 2 *Dutcher* 268, 276; *Trustees* v. *Brooklyn Ins. Co.*, 19 *N. Y.* 305; *New York Central Ins. Co.* v. *National Ins. Co.*, 20 *Barb.* 469. As will appear in the sequel the decision of that question is not necessary in this case.

Pearce was the agent of the company. He had been its agent for fifteen years, and had taken a great many policies for the company. He testified that the company always forwarded policies to him before it received the premiums, and that it was his duty to deliver the policies and collect the premiums. He also testified that it was the rule of the company for the agent to report once a month that he always held the funds for a month, and sometimes longer. His commissions were deducted from the premiums when he made his remittances. The condition in this policy " that if any broker or any other person than the assured has procured this policy, he shall be deemed the agent of the assured and not of the company," does not debar the company of the power to appoint agents and clothe them with such authority—general, special or limited—as might be advisable; and the delegation of such authority will carry with it such powers and consequences as are incident to the relation of principal and agent within the scope of the authority conferred. There can be no doubt that, under the circumstances of this case, payment to Pearce of premiums on policies negotiated by him was payment to the company. He was constituted its agent for the purpose of receiving such premiums.

The note taken by Pearce was payable to him individually and was endorsed by Baldwin. Pearce testifies that he took the note on his own responsibility, that he got it discounted at bank within a week or ten days after he received it, and perhaps in less time, and that the proceeds were passed to his credit. The note was discounted and the proceeds passed to Pearce's credit in the bank before the fire occurred. On the next day after the fire Pearce sent his account to the secretary

Carson v. Jersey City Insurance Company.

of the company, including the premiums on this policy and other policies he had negotiated for the company, inclosing therewith his checks for these premiums, less his commissions. In his letter he says, speaking of the Carson policy, "the premium was settled at the time it was due." The company, having received information of the fire, has not used Pearce's check. The president testified that he informed Pearce that they would not complicate matters by accepting the premium, and that he could take the checks back, or, if he wished, might leave them with the secretary. The checks are still in the secretary's hands, unused. The note was paid by Baldwin after the fire, but before it matured.

Assuming that the note was given, not as payment, but only as an instrument by which to obtain the money for the premium, and that Pearce, in obtaining its discount, acted as the agent of the plaintiff, and giving to the condition of insurance the most literal interpretation it is susceptible of, as soon as the note was discounted and Pearce received the proceeds, the premium was actually paid, as much so as if he had received for it a check on a bank or an order on a third person which was paid on presentation. On a state of facts much less direct and positive the court held in *Chickering* v. *Globe Ins. Co.*, 116 *Mass.* 321, that the funds of the assured had come into the hands of the agent, and were a payment of the premium within the meaning of a similar provision in a policy. The question of the power of an agent to waive conditions of insurance does not arise. The agent had authority to receive the premium for the company. Payment of it to him was payment to the company; and when the money for it actually came into his hands from the discounting of the note, the premium was actually paid, and the policy took effect then by its own terms.

*Third.* Exception was taken to the substance and service of proof of loss. Proofs were served March 8th, March 28th and March 31st. The first was served within the time prescribed; the others after that, to meet objections made to former proofs. , Condition 8 requires that the proofs shall

be in writing, signed and sworn to by the insured, and shall give all encumbrances upon the property. The proofs served were signed and sworn to by the insured. Besides the mortgages named, judgments had been recovered against the insured after the application was made. With the last proofs served a detached paper containing a statement of the mortgages and judgments was delivered. On the 27th of April, 1880, before this suit was commenced, and after the thirty days had expired, within which the proof of loss was required, the defendant obtained the examination of Carson under oath, pursuant to one of the conditions of insurance.

Failure to comply with the condition of insurance with respect to the reasonableness or sufficiency of the preliminary proofs, may be waived by the insurer. The waiver may be by parol, although the policy provides that the conditions of insurance shall neither be changed nor waived, except in writing signed by the president or secretary. Such a stipulation applies only to those conditions and provisions in the policy which relate to the formation and continuance of the contract of insurance and are essential to the binding force of the contract while it is running, and does not apply to those conditions which are to be performed after the loss has occurred, in order to enable the assured to sue on his contract, such as giving notice and furnishing preliminary proof of loss. *May on Ins.*, § 511; *Wood on Ins.*, § 496; *Franklin Fire Ins. Co.* v. *Chicago Ice Co.*, 36 *Md.* 102, (11 *Am. Rep.* 469); *Blake* v. *Exchange Ins. Co.*, 12 *Gray* 265; *Priest* v. *Citizens' Ins. Co.*, 3 *Allen* 602. In this case there was competent evidence to justify a jury in finding a waiver of a literal compliance with the condition with respect to the substance and service of preliminary proofs in all matters to which objection was made.

*Fourth.* The condition which provides that all fraud, or attempt at fraud, by false swearing or otherwise, shall cause a forfeiture of all claim under the policy, is available as a defence only when it appears that the assured knowingly and intentionally swore falsely, or said or did that which is claimed

to be fraudulent. *Wood on Ins.*, § 429. Mere mistake in stating facts, or an overvaluation in making out proofs of loss, is not sufficient to sustain the defence. It must appear that the erroneous statement or overvaluation was made intentionally and with a fraudulent intent. *May on Ins.*, § 477; *Jones* v. *Mechanics' Ins. Co.*, 7 *Vroom* 29; *Gibbs* v. *Continental Ins. Co.*, 11 *Hem.* 611; *Franklin Fire Ins. Co.* v. *Vaughan*, 92 *U. S.* 516; and the question is one of fact for the jury. *Wood on Ins.*, § 429; *Ins. Co.* v. *Weides*, 14 *Wall.* 376.