## HARTFORD ACCIDENT & INDEMNITY CO. v. COOPER PARK DEVELOPMENT CORPORATION.

### No. 9581.

Circuit Court of Appeals
Third Circuit.

Argued June 8, 1948.
Decided Aug. 20, 1948.

Thomas M. Farr, of Camden, N.J. (Norcross & Farr, of Camden, N. J., on the brief), for appellant.

Samuel P. Orlando, of Camden, N. J., for appellee.

Before BIGGS, GOODRICH, and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

In July, 1942, plaintiff issued a Workmen's Compensation insurance policy to the defendant through its general agent, Fried and Fishman Company, Inc. The latter firm was also engaged at the time in a general real estate brokerage business, and acted as the rental and management agent of the defendant's housing development in Camden County, New Jersey.

Monthly statements were rendered by Fried and Fishman to the defendant itemizing rental income, commission charges and disbursements for advertising, repairs, insurance, mortgage interest, real estate taxes, etc. The December, 1943, statement charged the defendant with the $3600.26 insurance premium involved in the present appeal,[1] listing it as a payment made to "F. & F. (Audit for Comp.)". Although

---

[1] The policy was for the period of July 7, 1942, to July 7, 1943. As is usual in such policies, an estimated premium was stated therein and was paid, but the

Fried and Fishman so charged the defendant's rental account with the payment of the premium, it failed to account to the plaintiff. The latter brought suit for this, as well as other premiums, in June, 1947. At the trial, defendant contended that payment had been made of the $3600.26 when Fried and Fishman deducted that sum from the rental account and credited itself with the receipt of that amount as above stated. The defendant admitted liability as to the other premiums totaling $490.58 plus interest of $75.68, or a total of $566.26.

On the record as stated both plaintiff and defendant moved for directed verdicts. The defendant's motion was denied and the plaintiff's motion granted. The instant appeal followed.

To the defendant's contention, here as below, that there was a payment of the premium to the plaintiff, the latter asserts that it is the law that an agent cannot agree that a credit on his private indebtedness to the insured shall constitute payment of the premium on the policy.[2] Here, says the plaintiff, the agent was indebted to the defendant to the extent of his rental collections and he could not satisfy any part of that indebtedness by accepting a credit on it in payment of the premium.

The authorities relied on by the plaintiff in support of its contention are in no way dispositive of the issue in the case sub judice. Parenthetically, it may be noted that it has not cited any New Jersey decisions, although the insurance policy was issued in New Jersey and accordingly, the law of New Jersey governs, as we held in Wooton Hotel Corporation v. Northern Assur. Co., Limited, 3 Cir., 1946, 155 F.2d 988.[3]

Proceeding to a consideration of the New Jersey cases, as we are required to do under Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, we find that payment to an agent authorized to collect premiums constitutes payment to the insurance company even though the agent fails to remit. Zriny v. Hartford Fire Ins. Co., 1932, 10 N.J.Misc. 181, 158 A. 430. The agent has no implied authority to waive payment of the premium in money and to take in lieu thereof merchandise, but should he do so testimony may be submitted to establish consent, estoppel or ratification by the insurance company. Cohen v. New Zealand Ins. Co., 1924, 100 N.J.L. 110, 126 A. 417, 418; Fidelity & Deposit Co. of Maryland v. Brocks Garage, Inc., 1918, 92 N.J.L. 239, 104 A. 132.

Pertinent to the issue here involved is the case of Carson v. Jersey City Ins. Co., 1881, 43 N.J.L. 300, 39 Am.Rep. 584. There, the agent, on delivering the policy, received the insured's note payable to him individually. The agent took the note to his own bank, discounted it and the proceeds were credited to his account. Subsequently the insured suffered a loss by fire. The following day the agent remitted to the insurance company. The note itself was not paid by the insured until after the fire. The insurance company, having received information of the fire, refused to accept the agent's remittance, contending that the mere acceptance by the agent of the insured's note did not constitute payment of the premium. The court ruled, however, that "* * * as soon as the note was discounted and Pearce (the agent) received the proceeds, the premium was actually paid, as much so as if he had received for it a check on a bank or an order on a third person which was paid on presentation." (Emphasis supplied.) The opinion pointed out that the significant fact was that funds of the insured had come into the hands of the agent. Said the court (page 309 of 43 N.J.L.):

---

ultimate amount of the premium was to be based upon an audit by the plaintiff of the payroll accounts of the defendant and application thereto of stipulated rates. Such an audit was made. The amount of the additional premium so determined was $3600.26 and it became due on the completion of the audit in September, 1943.

[2] Plaintiff cites 2 Couch, Cyclopedia of Insurance Law, p. 1473; Turlington v. Metropolitan Life Insurance Co., 193 N. C. 481, 137 S.E. 422; Fernan v. Prudential Insurance Company of America, Mo.App., 162 S.W.2d 281.

[3] Under paragraph 1 of the Agency Agreement the agent was authorized "to issue and deliver policies" in "Camden County, New Jersey and vicinity."

"The agent had authority to receive the premium for the company. Payment of it to him was payment to the company; and *when the money for it actually came into his hands from the discounting of the note, the premium was actually paid * * *."* (Emphasis supplied.)

Of particular significance is the reference in the Carson case to Chickering v. Globe Mut. Life Ins. Co., 1874, 116 Mass. 321, where it had also been held that when the funds of the assured come into the hands of the agent there is a payment binding on the insurance company. In that case one Osborn was the agent of the insurance company. He was also the agent of the firm of Chickering & Sons for the sale of pianos. It was the practice for the firm to pay the insurance premiums of its partners, one of whom was a Colonel Chickering. There was also a "general understanding" between Osborn and the Chickerings that any charge which Osborn had against the Colonel for insurance premiums "should be set off" against any charge which Chickering & Sons should have against him. The Colonel's premium on a life insurance policy became due February 9, 1871. Some time prior to that date Osborn told the Colonel he had "taken care of" the premium for him. Osborn was indebted to the Chickering firm on a running account between them. The Colonel died on February 14, 1871, before Osborn had remitted to the insurance company. Under the terms of Osborn's insurance agency he was required to make a statement of his accounts on the first and fifteenth of every month on all premium collections and to remit at the same time. The insurance company refused to make payment on the policy contending that there had not been a payment of the premium. Suit was brought by the decedent's widow and the insurance company defended on the specific ground that "in the absence of usage or express contract, an agent cannot receive payment of a debt due his principal by offsetting his private debt."

The court held that if the facts as related were established, there was a valid payment of the premium under the circumstances. In disposing of the insurance company's contention that the agent cannot receive "payment" by offsetting his private debt, the court said, page 330:

"It is objected that the effect of such an arrangement would be to render Osborn a debtor to the corporation without their consent; but it is difficult to see how it could have any effect in that respect, to distinguish it from a payment in any other mode. *If it were an actual placing of money in the hands of their agent, it would add to the fund which he held in trust for the defendants, and would not make him their debtor in any other capacity or mode."*[4] (Emphasis supplied.)

While the New Jersey courts have not squarely ruled on the question here involved, we believe that the New Jersey view is indicated by the specific ruling in the Carson case and its citation, with apparent approval, of the Chickering case. Our belief is strenthened by the reference, by the Court of Errors and Appeals of New Jersey, in Cohen v. New Zealand Ins. Co., supra, to the Carson case. On that basis there is no difficulty in disposing of the question under consideration.

■■ There is a striking similarity between the instant case and the Chickering case. In both cases the agent simultaneously represented the insurance company and the insured in their respective businesses; there was a running account between the agent and his non-insurance principal; the agent offset the amount of the premium against his indebtedness to his non-insurance principal and thereafter there was a balance in the running account due his noninsurance principal.[5] In both cases the insurance company advanced the

---

[4] Under the terms of his insurance agency Osborn was required to hold premiums which he collected as a separate trust fund. He was further obligated to invest the collected premiums (after deduction of his commissions) in certified checks or drafts and to remit the latter to his principal when he submitted his accounts on the first and fifteenth of the month.

[5] In the case at bar, although the offset for the premium payment in December, 1943, exceeded that month's rental collections, there was still at that time a balance in the running account in defendant's favor as evidenced by the fact

identical contention, almost verbatim, that "an agent cannot receive payment of a debt to his principal by offsetting his private debt."

On its facts, the instant case is even more favorable to the defendant's position. Here the agent was a general agent of the plaintiff. Under paragraph 2 of the Agency Agreement "accounts of money due the Company" were to be rendered monthly by the agent and "the balance shown to be due to the Company shall be paid not later than sixty days after the end of the month for which the account is rendered." The foregoing clearly demonstrates the existence of a creditor-debtor relationship between the plaintiff and its agent with respect to premium collections. There was no earmarking of premium payments and no trust relationship with respect to them. When the agent collected the premium he became the plaintiff's debtor and was allowed an extended period for payment of his debt—"sixty days after the end of the month for which the account is rendered."

In addition, here the agent acted as defendant's real estate management agent. The practice or general usage of such agents in charging disbursements in payment of proper insurance premiums against rental income is so well established that judicial notice may be taken thereof. Restatement of the Law of Agency, § 36g. What the agent did in paying the insurance premium and charging it against the rental account is a settled practice on the part of real estate management agents. Had the matter gone to the jury, that practice might well have been taken into consideration in determining whether the agent had actually charged the defendant's rental account with payment of the insurance premium. It might also have been considered by the jury as establishing consent or ratification by the plaintiff. Cohen v. New Zealand Ins. Co., supra.

■ Finally, plaintiff contends that the defendant offered no evidence to prove that the rentals received by the agent were paid in cash, and that it may well be that the rent payments were paid by "some other medium of exchange", and thereby came under the rule prohibiting payment of premiums except by cash, check or draft. Nothing more need be said in disposition of that contention than that in the instant case the agent had charge of some 134 dwellings and in the absence of specific evidence on the nature of the rental payments the jury could reasonably have drawn the inference that the rentals were in fact paid by cash, check or draft.

■ The conclusion is inevitable that the directing of a verdict in plaintiff's favor was erroneous. The proper approach to a solution in this case lies in the question, whether the insured's agent appropriated to himself in his capacity as agent for the insurance company funds belonging to the insured.[6] And once plaintiff's agent received the premium, under the applicable law, it is deemed paid to the insurance company. On this basis, the case was one for the jury, for if the jury believed the defendant's evidence and made the inferences permissible under the circumstances, defendant was entitled to a verdict.

Accordingly, the judgment of the District Court will be reversed and the case will be remanded for further proceedings not inconsistent with this opinion.

---

that on December 31, 1943, the agent owed the defendant $3660.42 (page 54, N. T.; also Exhibit D4, Defendant's Balance Sheet of December 31, 1943).

[6] Wooddy v. Old Dominion Ins. Co., 31 Grat. 362, 31 Am.Rep. 732, decided by the Supreme Court of Virginia in 1879, is of some interest here. There the insurance agent rented a house from the insured and when the latter tendered him money in payment of the premium the agent declined it, stating that he had money in his hands due to the insured on account of rent which he would credit on the premium. The court held that this constituted "payment" of the premium within the meaning of a policy condition requiring actual payment of the premium to the company, or its agent, although the agent failed to remit prior to the occurrence of a loss.