THOMAS L. HANSON, PLAINTIFF, v. NATIONAL LIBERTY FIRE INSURANCE COMPANY OF AMERICA AND THE FARMERS FIRE INSURANCE COMPANY OF YORK, PENNSYLVANIA, DEFENDANTS.

Submitted September 10, 1924—Decided October 7, 1924.

1. Where a policy of fire insurance contains the ordinary language making it void if there is a change of ownership in the property insured, no recovery can be had thereon by a purchaser of the property at foreclosure sale in the absence of a suitable recognition by the insurer of the change of ownership.

2. A clause in a fire policy reading "Loss, if any, payable to A. B., mortgagee, as his interest may appear" without more, confers on the mortgagee no better right of recovery than that of the owner in the absence of such clause. *Aliter* in cases where the "standard mortgagee clause," constituting a separate engagement between the insurer and the mortgagee, is joined in the insurance contract.

3. Two insurance policies appeared to have each a "standard mortgagee clause" attached; but the clause actually attached to policy A referred in terms to policy B; and that attached to policy B in terms to policy A. *Held*, that both were ineffective at law and that if genuine (which was disputed) reformation must be had in equity.

On defendants' rules to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KATZENBACH.

For the plaintiff, *Joseph T. Lieblich.*

For the defendants, *Andrew J. Whinery.*

The opinion of the court was delivered by

PARKER, J. Plaintiff, the purchaser at foreclosure sale of certain real property, the building on which was insured against fire by the defendants, sues as assignee of the rights of the first mortgagee under the policies, which were two in number:

1. Fire policy, National Liberty Insurance Co., in favor of the Jersey Pork Producing Corporation, for three years, from June 29th, 1921, $1,500.

2. Similar policy by Farmers Fire Insurance Company, same amount, period and insured.

Both policies were issued by R. O. Walling as agent. Each policy had attached to it a "farm form," on which was interlined, or otherwise entered in typewriter, this clause: "Loss, if any, payable to Leonard D. Roberts, mortgagee, as his interest may appear." There is no reference to any "mortgagee clause attached," as frequently occurs in such cases, and much of the controversy revolves around the question whether either policy had any "attached" mortgagee clause, as will presently appear.

The property was at the time under mortgage not only to Roberts, but subject to a later mortgage to one Poling, whose mortgage interest was not recognized in either policy. Poling foreclosed his mortgage, and in May, 1922, the property was sold under this foreclosure to Thomas L. Hanson, and deed made to him accordingly. It is claimed and denied that Walling, the agent, had notice of the sale. In any case, it is clear that no recognition of, or consent to, the change of ownership was endorsed on either policy or formally executed by the companies in any way. The fire occurred on November 16th, 1922, Hanson being still owner. Roberts claimed the insurance as mortgagee, and collected from a third company, whose policy is not laid before us, and which apparently paid voluntarily. The present defendants contested the claim, and examined Roberts under oath, and finally refused to pay. Roberts then, in July, 1923, assigned his mortgages to Hanson, together with his claims to the insurance money. The principal question was whether Hanson was entitled to recover in rights of Roberts, his assignor. The court allowed the jury to take the case, and they found for the plaintiff.

Both policies contained the usual clause that unless otherwise provided by agreement endorsed thereon or added thereto they should be void "if with the knowledge of the insured, foreclosure proceedings be commenced  *  *  *  by

virtue of any mortgage or trust deed; or if any change other than by the death of the insured, take place in the interest, title or possession of the subject of insurance   *   *   * whether by legal process or judgment or voluntary act of the insured or otherwise." There is nothing to show that either company assented to this change of title. Poling testified that he had told Walling, the agent, and that Walling had said he "would attend to it." But apparently he never did attend to it. In this situation, there could be no recovery on the policies by the new owner as such. *Grunauer* v. *Westchester Fire Insurance Co.,* 72 *N. J. L.* 289; *Plockzek* v. *St. Paul Insurance Co.,* 91 *Atl. Rep.* 812.

Nor did Roberts, as mortgagee, stand in any better position by virtue of the interlined clause, "loss, if any, payable to Leonard D. Roberts, mortgagee, as his interest may appear." In such case the law is settled in this state that a mortgagee cannot recover if the owner could not. *Milliken* v. *Woodward,* 64 *N. J. L.* 444. For the better protection of innocent mortgagees, the device was adopted of attaching to the policy a partially separate agreement between the company and the mortgagee, called the "standard mortgagee clause," creating "an independent contract of insurance for the separate benefit of the mortgagee, engrafted upon the main contract of insurance contained in the policy itself, and to be rendered certain and understood by reference to the policy." Such is the illuminating language of the late Mr. Justice Voorhees in *Reed* v. *Fireman's Insurance Co.,* 81 *Id.* 523 (at *p.* 526).

The plaintiff's counsel, recognizing the force of the foregoing rules, relies in the main on what are claimed to be "standard mortgagee clause," one attached to each policy. It is undeniable that each policy, when put in evidence, had attached to it a rider, in one case headed "Mortgagee Clause, 'A,'" and in the other, "N. Y., N. J. and Conn. Standard— Mortgage Clause," each containing general language appropriate to safeguard the interests of the mortgagee in case of change of ownership, &c., not coming to his knowledge. But these riders we consider to have been shown fraudulent, and

that in any case they are without legal effect. Fraudulent, because Walling, the agent, denied he had ever authorized them; because they did not bear his signature or that of any other person on behalf of the insurer, the signature line being blank, and because one of them bears the imprint "Form 246, 50 M. 3-231310," indicating to the expert eye that it was printed in March, 1923, several months after the fire.

Apart from this, they are without legal efficacy, even if genuine, because the farmers' rider is, in fact, attached to the liberty policy, reciting that it is part of the farmers' policy, and the rider attached, in fact, to the farmers' policy recites that is "attached to and made a part of" the liberty policy. Even if we should assume for present purposes that these riders are genuine and that it was honestly intended to sign them and attach them to their appropriate policies, the fact remains that they are not so signed or attached, and in their present condition and juxtaposition are meaningless and nugatory. It may be that a court of equity may, if it find the claim an honest one, direct a reformation of the policies, but a court of law cannot. In this situation, the verdicts for the plaintiffs were without legal support, and must be set aside.