## WOOTTON HOTEL CORPORATION v. NORTHERN ASSUR. CO., Limited.

### No. 8859.

Circuit Court of Appeals, Third Circuit.
Argued Nov. 19, 1945.

Decided May 28, 1946.

Joseph A. Ball, of Philadelphia, Pa., for appellant.

Joseph S. Conwell, Jr., of Philadelphia, Pa. (Pepper, Bodine, Stokes & Schoch, of Philadelphia, Pa., and Elias Naame, and Bolte, Miller & Repetto, all of Atlantic City, N. J., on the brief), for appellee.

Before BIGGS, McLAUGHLIN, and O'CONNELL, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Plaintiff is a New Jersey corporation which on August 2, 1941 owned and possessed an ocean pier at Brigantine Beach, New Jersey. On or about that date the defendant, an English company, issued a policy of windstorm insurance to the plaintiff on certain of the latter's property in tiff on certain of the latter's property in the sum of Thirteen Thousand Dollars. Ten Thousand Dollars of that coverage was allocated to the pier. On March 2 and 3, 1942 there was a moderately severe storm at Brigantine Beach. Winds of gale force during part of it reached a maximum velocity of 55 miles per hour. The normal wind velocity for that area at the time was 16.8 miles per hour. A portion of the pier extending out into the ocean was destroyed during the storm. Plaintiff sued the defendant under the policy of insurance for alleged damage to the pier. The case was tried before the District Court sitting without a jury. The Court decided in favor of the defendant holding that "The damage to the pier was caused by high water driven by wind, which hazard is expressly excepted by the terms of the policy."

The first question for our determination is whether the insurance contract is to be construed under the laws of New Jersey or of Pennsylvania. The final paragraph on the face of the policy reads: "In Witness Whereof this Company has executed and attested these presents; *but this policy shall not be valid until countersigned by the duly authorized Agent of the Company at 58—14 Collingswood N. J.*" (Emphasis ours). Immediately following is the signature of "R. P. Barbour, U. S. Manager" and on the left is the language "Countersigned this 15th day of July, 1941 (Signed) E. MacConnell, Agent." Attached to the face of the policy is a form titled "Wootton Hotel Corporation." This allots Ten Thousand Dollars of the total insurance to the pier and the balance of Three Thousand Dollars to another building which does not concern us. It concludes with the clause: "Attached to and forming part of Policy No. 120019 of the Northern Assurance Company, Ltd. *issued at its Collingswood, New Jersey Agency.* Dated August 2, 1941 (Signed) E. MacConnell, Agent." (Emphasis ours.)

Sargent, the defendant's Philadelphia manager, testifying as a witness for the plaintiff, explained the counter-signature condition of the policy saying: "Well, it is necessary, your Honor, by law to have a resident of New Jersey counter-sign the policy; in other words, a resident of Pennsylvania cannot counter-sign a policy of insurance covering property in the state of New Jersey, and Mr. MacConnell who is an agent residing in the state of New Jersey, would sign New Jersey policies." He also testified without objection that MacConnell signed the policy in the Philadelphia office.[1] With reference to this, plaintiff's attorney stated that he wanted to bring out by this witness " * * * that the policy was or-

---

[1] MacConnell was not present at the trial. It was explained that he was away in the Army at the time.

dered, executed and delivered in Pennsylvania." The New Jersey law referred to by the manager confined such an insurance company as the defendant to business in that state strictly in accordance with its provisions.[2] Plaintiff based its right of recovery squarely upon the written insurance contract which it incorporated into its statement of claim. This was reiterated in plaintiff's opening to the Trial Court. The policy was put into evidence in the plaintiff's case. At no time was there the slightest suggestion of any waiver of the mandatory counter-signature provision above quoted. There was no claim by either party that the policy was void because not actually countersigned at Collingswood. There was no attempt to interpret the language to mean simply that the Collingswood agent must countersign but not necessarily at Collingswood.

Obviously the New Jersey statute was the reason for both the counter-signature and for the policy language reading: " * * * issued at its Collingswood, New Jersey, Agency." The provision calling for the counter-signature must be construed to mean countersigned at Collingswood. This being so, plainly the policy was intended by the parties to be a New Jersey contract. The last thing to be done without which there was no agreement, was the New Jersey counter-signature. It is on that specific agreement that the suit is founded. Under

the facts we fail to see how the testimony of Sargent, even though presented without objection, can eliminate the parol evidence rule, for despite its name, that rule is not a rule of evidence but one of substantive law. Williston on Contracts, Revised Edition, Section 631. The parol evidence rule as defined by Professor Wigmore is: "When a jural act is embodied in a single memorial, all other utterances of the parties on that topic are legally immaterial for the purpose of determining what are the terms of their act." Wigmore on Evidence, 3d edition, Section 2425. Restatement of Contracts, Section 243, setting out the particular legal principle here involved reads:

"Where by the terms of an integration a certain fact is essential to the creation or continuance of an obligation and it is, to the knowledge of the obligor, falsely recited in the integration that the fact exists, the integrated agreement is not deprived of legal operation unless the existence of the fact is made essential by law independently of any agreement requiring it." [3]

█ Under the law of Pennsylvania where this diversity case was tried, the insurance policy in this litigation is to be construed as a New Jersey contract. In Hardiman v. Fire Ass'n of Philadelphia, 212 Pa. 383, at page 390, 61 A. 990, at page 991 the Court said:

---

[2] The New Jersey insurance statute with reference to foreign and out of state companies, with the exception of life companies, doing business in that state in effect during the period of the policy here involved is found in New Jersey Statutes Annotated 17:32–11 and reads:

"No insurance company of another state or foreign country, except a life insurance company, may transact business in this state, except through duly constituted and appointed agents resident herein, or resident elsewhere if not authorized to act as an agent for any insurance company in any other state, or as a broker with principal place of business in any other state, whose principal place of business for the conduct of the agency is located in this state, and who shall maintain a bona fide duly operated business office in this state, and shall

issue and countersign all policies and contracts so issued."

This was repealed by the New Jersey Session Laws of 1944, c. 175, p. 675, Section 26, with repealer effective May 2, 1944.

[3] Illustration #1 for this passage reads:
"A, an insurance company, issues a fire policy to B, which provides that the premium is $100 and that the insurance company is not bound until the premium has been paid. The policy recites that the premium has been paid although in fact it has not been. A loss occurs during the term of the policy; A is liable to B. The recital precludes A from asserting the invalidity of the policy because of the non-performance of the condition of payment. B's acceptance of the policy justifies the inference of a promise on his part to pay the premium, supplying the legal requirement of consideration."

"The authorities are well settled that, where a policy is required to be countersigned by an agent in another state, the contract is to be governed by the law of the state where the agent resides. The substance of the cases is thus stated in 22 Am. & Eng. Ency. of Law (2d Ed.) 1350: 'If the policy provides that it shall not be complete until countersigned by an agent at a specified place, it is a contract of the place where it is to be countersigned.' "

The policy further provides that it is made and accepted subject " * * * to the stipulations and conditions printed on the back hereof which are hereby made a part of this policy * * *." It states that there be no waiver of such stipulations and conditions unless in writing added to the policy. On the back of the policy appears the following:

"This entire policy shall be void, unless otherwise provided by agreement in writing added hereto, *if the interest of the insured be other than unconditional and sole ownership;* or if the subject of insurance be a building on ground not owned by the insured in fee simple; or if any change other than by the death of insured, take place in the interest, title or possession of the subject of insurance (except change of occupants); or if this policy be assigned before a loss." (Emphasis ours.)

On February 2, 1942 the appellant entered into an agreement to sell its Brigantine property, including the pier, for the sum of Seventy Thousand Dollars. On March 10, 1942 settlement was completed with appellant then receiving the full sales price. Appellee urges that under the above quoted language the policy was void on the date of the alleged loss. We think this is sound doctrine under the New Jersey decisions. In Grunauer v. Westchester Fire Ins. Co., Err. & App., 72 N.J.L. 289, 62 A. 418, 3 L.R.A.,N.S., 107, a fire insurance policy was held void because prior to the fire the insured had executed a formal contract to sell the insured premises to a third party. That case was followed in Levin v. State Assurance Co., Err. & App., 105 N.J.L. 422, 144 A. 797, 798. The policy there provided: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto; shall be void * * * if the interest of the insured be other than unconditional and sole ownership * * *; or if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance, whether by legal process or judgment, or by voluntary act of the insured, or otherwise." After the issuance of the insurance policy the plaintiffs made a formal contract for sale of the premises in question to their tenant who completed the transaction and took possession. Before the deed had been tendered the property was destroyed by fire. The Court held 105 N.J.L. at page 423, 144 A. at page 798:

"Under our cases, the agreement of sale was in direct violation of the terms of the policy, in that the ownership is not unconditional and sole, there is a change by the written agreement in the interest, title, and possession of the subject of the insurance, as provided by the policy, not indorsed thereon or added thereto. Grunauer v. Westchester Insurance Co., 72 N.J.L. 289, 62 A. 418, 3 L.R.A.,N.S., 107. That case was in this court, and the facts of the case are substantially the same, as the facts of the case under discussion. Hanson v. National Liberty, Fire Insurance Co., 100 N.J. L. 215, 126 A. 453. As was said in the case of Plockzek v. St. Paul [Fire & Marine] Insurance Co., N.J., 91 A. 812, the provisions, above quoted, is a part of the contract and must be enforced, unless there is evidence that its provisions have been waived by the defendant company. There is no such evidence of waiver in this case."

As seen, the element of possession which was in the Levin decision is absent here. Possession, however, is merely one feature of ownership and even without it the Levin opinion must be held to establish the New Jersey rule against the appellant. The later case of Evans v. London Assurance Corporation, Err. & App., 107 N.J.L. 183, 151 A. 613 does not conflict with this view. There a fire insurance policy was upheld in favor of the insured where the premises were to be conveyed by implied terms of an agreement which had to do with different property. The Court of Errors & Appeals in affirming the judgment adopted the opin-

ion of the Court below and quoted it in full. As quoted, that opinion states 107 N.J.L. at page 186, 151 A. at page 615; "* * * the facts with which the Court dealt in that case [Levin v. State Assurance Co., supra] were so dissimilar to those sub judice that, in my view, the decision is not in point. Here the plaintiffs had not agreed to sell the insured property. * * * Here the required mutuality of obligation was entirely lacking."

In this matter there is no question of any waiver of the applicable ownership condition. There is no attempt by the plaintiff to avoid the impact of the Levin decision other than to urge that the policy is to be construed under Pennsylvania and not New Jersey law. Admittedly there was a written agreement of sale for the particular premises at the time of the storm. Within a week thereafter the sale was consummated. The issue was properly raised by the fifth defense of the supplemental answer. Under the controlling New Jersey law the agreement of sale violated the policy and bars plaintiff's recovery thereunder.

In view of the above, it is unnecessary to discuss the phrase "high water" in the instant policy and we express no opinion regarding it. However, it may be well to point out that while the same clause did appear in the policy in Newark Trust v. Agricultural Ins. Co., 3 Cir., 237 F. 788, it was not there construed. That case turned upon an entirely different policy condition.

Affirmed.

BIGGS, Circuit Judge, concurring.

I concur in the majority opinion and in its reasoning in all respects save one. The decision of the Supreme Court of Pennsylvania in Hardiman v. Fire Ass'n of Philadelphia, 212 Pa. 383, 390, 61 A. 990, 991, cited in the majority opinion, sets out the applicable Pennsylvania conflict-of-laws rule. The Court in the cited case said: "The authorities are well settled that, where a policy is required to be countersigned by an agent in another state, the contract is to be governed by the law of the state where the agent resides." It is clear that the policy in the instant case was to be countersigned in New Jersey by an agent resident therein, was in fact countersigned by such an agent and that therefore the law of New Jersey must govern the substantive rights of the parties. It is unnecessary to make any application of the parol evidence rule under the circumstances of the case at bar.