NORTHERN INSURANCE COMPANY OF NEW YORK, Appellee,

v.

AARDVARK ASSOCIATES, INC. and Insurance Company of North America, Aardvark Associates, Inc., Appellants.

No. 90–3687.

United States Court of Appeals, Third Circuit.

Argued June 12, 1991.

Decided Aug. 8, 1991.

Stephen G. Weil (argued), Joseph D. Tydings (argued), Anderson, Kill, Olick & Oshinsky, Washington, D.C., E. Max Weiss, Culbertson, Weiss, Schetroma & Schug, Meadville, Pa., for appellants.

Thomas W. Brunner (argued), Wiley, Rein & Fielding, Washington, D.C., Richard M. Shusterman (argued), White and Williams, Philadelphia, Pa., Louis C. Long, Meyer, Darragh, Buckler, Bebenek, Eck & Hall, Pittsburgh, Pa., for appellee.

Roger E. Warin (argued), Steptoe & Johnson, Washington, D.C., amicus curiae, for Ins. Environmental Litigation Ass'n.

Before NYGAARD and ALITO, Circuit Judges, and FULLAM, District Judge.*

## OPINION OF THE COURT

ALITO, Circuit Judge:

The district court granted summary judgment in favor of two insurance companies and against Aardvark Associates, Inc., a hauler of industrial waste from whom the United States Environmental Protection Agency ("EPA") is seeking to recover costs for cleaning up waste disposal sites. Applying Pennsylvania law, the district court held that long-term pollution at the sites was not covered under Aardvark's general liability policies due to a standard clause excluding coverage for any discharge of pollution that is not "sudden and accidental." 743 F.Supp. 379 (W.D.Pa.). We will affirm.

I.

Aardvark engages in the business of hauling industrial waste from production sites to disposal sites. In 1977 and 1978, Aardvark transported drums of industrial waste from Hughson Chemicals in Seagertown, Pennsylvania, to the Old Mill and New Lyme disposal sites in Ashtabula County, Ohio. Environmental officials discovered discharges of hazardous materials at these sites in 1981 and 1982.

In 1983, the EPA notified Aardvark of its findings at the Old Mill site and informed the company that it had been identified as a "potentially responsible party" liable for response costs under the Comprehensive Environmental Resource, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a). The EPA sent a similar notice regarding the New Lyme site in 1985. In 1989, the EPA filed two separate suits in the Northern District of Ohio seeking to recover costs from Aardvark and other parties pursuant to 42 U.S.C. § 9607(a).

___

* Hon. John P. Fullam, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

After receiving the initial letters from the EPA, Aardvark notified the Insurance Company of North America ("INA"), which had issued Aardvark general liability insurance policies from 1977 to 1981, and Northern Insurance Company of New York ("Northern"), which had issued Aardvark similar policies from 1981 to 1985. All of these policies contained a standard clause that generally excluded coverage for pollution damage. The clause, however, contained an exception to the exclusion "if the discharge, dispersal, release or escape" of pollutants was "sudden and accidental."[1]

After investigation, Northern commenced suit against Aardvark and INA in 1986 in the United States District Court for the Western District of Pennsylvania, seeking a declaratory judgment that it was not obligated to provide a defense against or indemnification for the CERCLA claims. Federal jurisdiction was based on diversity of citizenship. INA cross-claimed against Aardvark for a declaratory judgment that it was under no obligation to provide a defense or indemnification. Aardvark filed counterclaims, requesting a declaratory judgment that Northern was obligated to provide a defense and indemnification, as well as other relief.

After all parties moved for summary judgment, the district court granted summary judgment for Northern and INA. Relying primarily on two decisions of the Superior Court of Pennsylvania—*Techalloy Co., Inc. v. Reliance Ins. Co.*, 338 Pa.Super. 1, 487 A.2d 820 (1984), *allocatur denied*, 338 E.D. Allocatur Dkt. 1985 (Pa. Oct. 31, 1985), and *Lower Paxon Township v. United States Fidelity & Guaranty Co.*, 383 Pa.Super. 558, 557 A.2d 393 (1989), *allocatur denied*, 93 M.D. Allocatur Dkt. 1989 (Pa. Sept. 22, 1989)—the district court held that the pollution exclusion clause's exception for "sudden and accidental" dis-

charges was limited to discharges that are " 'both sudden, meaning abrupt and lasting only a short time, and accidental, meaning unexpected.' " App. 9, quoting *Lower Paxon*, 557 A.2d at 399. The court also rejected Aardvark's contention that the pollution exclusion clause applied only to "active" as opposed to "passive" polluters. Applying this interpretation of the pollution exclusion clause, the court held that Aardvark lacked coverage for the CERCLA claims. The court noted that Aardvark bore the burden of establishing that these claims fell within the exception for "sudden and accidental" discharges and that nothing in the summary judgment record showed that the discharges at the two disposal sites had been of that nature. Instead, the court observed, the materials in the record suggested that "the pollution at issue ... ha[d] been gradual, stretching over several years and many separate shipments of waste." App. 6. Aardvark appealed.

## II.

■ A. We turn first to the meaning of the standard pollution exclusion clause's exception for discharges that are "sudden and accidental."[2] The insurance companies contend that the phrase "sudden and accidental" is unambiguous and was properly construed by the district court. Aardvark argues that the phrase is ambiguous and is not limited to discharges that are abrupt but includes discharges that are unintended and unexpected.

These are not new arguments. As Aardvark notes in its brief, disagreement between insureds and insurers concerning the meaning of this provision has precipitated "a legal war ... in state and federal courts from Maine to California." Appellant's Br. at 6. We recently surveyed the resulting jurisprudence and noted that "the authority

---

1. Specifically, the policies provided that they did not apply:

    To bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquid or gasses, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of

    water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

2. The standard of review with respect to the district court's interpretation of the insurance policies is plenary. *Patterson v. American Bosch Corp.*, 914 F.2d 384, 387 (3d Cir.1990).

appears to be evenly divided between the parties' competing constructions of the pollution exclusion clause, with about half of the cases holding that the clause bars coverage, and with the other half holding that it does not." *New Castle County v. Hartford Accident and Indemnity Co.*, 933 F.2d 1162, 1195 (3d Cir.1991). Cogent arguments have been advanced on both sides of this question.

Because this is a diversity case, we must of course apply state substantive law, in this instance the law of Pennsylvania. The Supreme Court of Pennsylvania has not addressed the question before us, but the Superior Court has twice done so. In *Techalloy Co., Inc.*, a general liability insurer refused to defend a personal injury action against an industrial generator of toxic waste. The insurer relied on the standard pollution exclusion clause's exception for "sudden and accidental" discharges. After the Court of Common Pleas held that the insured lacked coverage, the Superior Court affirmed based on the pollution exclusion clause. The Superior Court held that the clause was not ambiguous. 338 Pa.Super. at 13, 487 A.2d at 827. In accordance with well-established Pennsylvania precedent,[3] the court applied the plain meaning of the pollution exclusion clause and ruled that the insured's lengthy history of toxic discharges on a "regular or sporadic" basis could not be viewed as "sudden." 338 Pa.Super. at 13–14, 487 A.2d at 827. The Supreme Court of Pennsylvania denied review. 338 E.D. Allocatur Dkt. 1985 (Pa. Oct. 31, 1985).

The Superior Court discussed the same issue at greater length in *Lower Paxon Township*, in which the court held that a township's insurance policy containing the same standard pollution exclusion clause did not cover claims based on the release of methane gas from a municipal landfill. Like Aardvark here, the township argued that the phrase "sudden and accidental" is ambiguous and should be construed to mean unexpected or unintended. 383 Pa.Super. at 568, 557 A.2d at 398. Reaffirming *Techalloy Co., Inc.*, the Superior Court rejected this argument. The court stated that the phrase was " 'clear and plain, something only a lawyer's ingenuity could make ambiguous.' " *Id.* at 402, quoting *American Motorists Ins. Co. v. General Host Corp.*, 667 F.Supp. 1423 (D.Kan. 1987). The court wrote that "[a]ny other interpretation of the policy is blatantly unreasonable" and that "[a]cceptance of [the township's] arguments would result in the emasculation of the policy in violation of our duty to enforce it." 383 Pa.Super. at 577, 557 A.2d at 402. Rejecting "lengthy argument and documentary materials concerning the drafting history and regulatory approval" of the pollution exclusion clause (*id.* at 402 n. 5), the court adhered to what it found to be the plain meaning of the clause, explaining (383 Pa.Super. at 577, 557 A.2d at 402 (emphasis in original)):

> To read "sudden and accidental" to mean only unexpected and unintended is to rewrite the policy by excluding one important pollution coverage requirement—abruptness of the pollution discharge. The very use of the words "sudden *and* accidental" (emphasis added) reveal a clear intent to define the words differently, stating two separate requirements. Reading "sudden" in its context, i.e. joined by the word "and" to the word "accident", the inescapable conclusion is that "sudden", even if including the concept of unexpectedness, also adds an additional element because "unexpectedness" is already expressed by "accident". This additional element is the temporal meaning of sudden, i.e. abruptness or brevity. To define sudden as meaning only unexpected or unintended, and therefore as a mere restatement of accidental, would render the suddenness requirement mere surplusage.

---

3. Pennsylvania courts have consistently applied the "plain meaning" doctrine to clearly worded policy exclusions. *See Standard Venetian Blind v. American Empire Ins. Co.*, 503 Pa. 300, 307, 469 A.2d 563, 507 (1983) (enforcing policy's business risk exclusion); *McCabe v. Old Republic Ins. Co.*, 425 Pa. 221, 223–4, 228 A.2d 901, 903 (1967) (validating provision excluding coverage of liability arising out of injury or death to an employee within the scope of employment).

*Lower Paxon*, 383 Pa.Super. at 577, 557 A.2d· at 402 (emphasis in original). Once again, the Supreme Court of Pennsylvania denied review. 93 M.D. Allocatur Dkt. 1989 (Pa. Sept. 22, 1989). Numerous district court decisions applying Pennsylvania law have followed *Techalloy Co., Inc.* and *Lower Paxon Township. See Federal Ins. Co. v. Susquehanna Broadcasting Co.*, 727 F.Supp. 169 (M.D.Pa.1989), *modified*, 738 F.Supp. 896 (M.D.Pa.1990), *aff'd*, 928 F.2d 1131 (3d Cir.1991); *Scarcia v. Maryland Casualty Co.*, No. 87–6691, 1988 WL 124570, 1988 U.S.Dist. LEXIS 12946 (E.D.Pa. Nov. 17, 1988); *United States Fidelity & Guar. Co. v. Korman Corp.*, 693 F.Supp. 253 (E.D.Pa.1988); *Centennial Ins. Co. v. Lumbermens Mut. Casualty Co.*, 677 F.Supp. 342 (E.D.Pa.1987); *American Mut. Liab. Ins. Co. v. Neville Chemical Co.*, 650 F.Supp. 929 (W.D.Pa.1987); *Fischer & Porter Co. v. Liberty Mut. Ins. Co.*, 656 F.Supp. 132, 140 (E.D.Pa.1986). *See also Cooper Indus., Inc. v. Aetna Casualty & Sur. Co.*, No. 374 C.D. 1985 (Pa. Ct.C.P. Dec. 7, 1990).

Although we are not bound in a diversity case to follow decisions of a state intermediate appellate court, we are instructed that such decisions are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). *See also Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967); *Commercial Union Ins. Co. v. Bituminous Casualty Co.*, 851 F.2d 98, 100 (3d Cir.1988); *Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 273–74 (3d Cir.1985). Applying this teaching here, we follow the decisions of the Superior Court.

The decisions of the Superior Court on the question before us are grounded on established principles of Pennsylvania law regarding the interpretation of insurance contracts. The decisions are well-reasoned and are supported by a substantial body of precedent from many other jurisdictions. Whether or not we would reach the same conclusion if we were exercising common law jurisdiction, we cannot say that the Supreme Court of Pennsylvania would reach a conclusion different from that of the Superior Court if it confronted the issue before us.

Aardvark understandably relies on our recent decision in *New Castle County*, in which we predicted that the Delaware Supreme Court would accept Aardvark's reading of the pollution exclusion clause. That prediction, however, cannot control our decision here. In predicting what the Supreme Court of Pennsylvania would do, we cannot logically assign greater weight to a predicted decision by the Delaware Supreme Court than to the decisions of the highest courts of other states that have reached a contrary result.[4] *See New Castle County*, 933 F.2d 1195 n. 60 (collecting cases). In *New Castle County*, without any specific guidance in Delaware case law, we predicted what the highest court of that state would do. Here, with strong guidance in decisions of the Superior Court of Pennsylvania, we feel constrained to reach a different conclusion. We therefore hold, in accordance with the decisions of the Superior Court of Pennsylvania, that the exception for "sudden and accidental" discharges applies only to discharges that are abrupt and last a short time. We reject Aardvark's argument that this phrase, under Pennsylvania law, includes other dis-

---

**4.** Moreover, it is not clear that Delaware and Pennsylvania courts take the same approach in determining whether a provision in an insurance contract is ambiguous. Compare *New Castle County*, 933 F.2d at 1196 ("under Delaware law, a court 'must consider the context and circumstances surrounding the meaning of what otherwise appears to be clear and unambiguous language'") with *Gene & Harvey Builders v. Pennsylvania Manufacturers Ass'n Ins. Co.*,

512 Pa. 420, 517 A.2d 910, 913 (1986) (where the policy language itself is unambiguous, a court must give effect to the language). *See also, e.g., Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983); *Guardian Life Ins. Co. v. Zerance*, 505 Pa. 345, 353, 479 A.2d 949, 953 (1984); *Adelman v. State Farm Mut. Auto. Ins. Co.*, 255 Pa.Super. 116, 123, 386 A.2d 535, 538 (1978).

charges that are unintended and unexpected.

■ B. We also reject Aardvark's argument that the pollution exclusion clause applies only to "active" polluters, *i.e.*, those who "actually release pollutants" (Appellant's Br. at 9), and not "passive" polluters. Under Pennsylvania law, when language in an insurance policy is clear and unambiguous, a court must give effect to that language. *Gene & Harvey Builders*, 512 Pa. at 426, 517 A.2d at 913 citing, *Pennsylvania Manufacturers' Ass'n Ins. Co. v. Aetna Cas. & Sur. Ins. Co.*, 426 Pa. 453, 233 A.2d 548 (1987); *Standard Venetian Blind Co.*, 503 Pa. at 305, 469 A.2d at 566. As previously noted, the clause in question excludes coverage for bodily injury or property damage "arising out of the discharge, dispersal, release or escape" of pollutants, subject to the exception for "sudden and accidental" discharges discussed above. We have scrutinized this language for any hint that it is limited to "active" polluters or those who "actually release pollutants," but we find no ambiguity and no support for Aardvark's argument. The clause unambiguously withholds coverage for injury or damage "arising out of *the* discharge, dispersal, release or escape" of pollutants (emphasis added), not merely the insured's discharge, dispersal, release or escape "of pollutants." As the district court aptly wrote in *Federal Insurance Co. v. Susquehanna Broadcasting Co.*, 727 F.Supp. at 177, "the exclusion clause makes no reference at all to active polluters or passive polluters. The terms are foreign to the policies in question." *See also Powers Chemco, Inc. v. Federal Ins. Co.*, 74 N.Y.2d 910, 548 N.E.2d 1301, 549 N.Y.S.2d 650 (1989).

Aardvark relies on one case decided under Pennsylvania law (*Covington Township v. Pacific Employers Ins. Co.*, 639 F.Supp. 793 (M.D.Pa.1986)), but that case is distinguishable. There, the court considered claims against a township for negligently monitoring the water supply and issuing sewage permits. The court held (639 F.Supp. at 799) that the language of the standard pollution exclusion clause concerning damage "arising out of" the discharge of pollutants did not unambiguously apply to claims based upon negligence in the performance of "public entity duties." In reaching this conclusion, the *Covington* court did not adopt a distinction between "active" and "passive" polluters. Here, Aardvark has no "public entity duties," and the claims against it are based squarely on the discharge of pollutants. Thus *Covington Township*, whether or not correct, is inapposite.

### III.

■ Having addressed the meaning of the pollution exclusion clause and its exception, we turn to the question whether summary judgment for the insurers was proper.[5] Rule 56(c) of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Accordingly, we must determine which party bore the burden of persuasion under Pennsylvania law on the question whether the CERCLA claims were based on "sudden and accidental" occurrences.

The structure of the standard pollution exclusion clause has an important bearing on this issue. As previously noted, the clause generally excludes coverage for injury or damage arising from pollution, but this exclusion contains an exception for "sudden and accidental" discharges. An insurer usually bears the burden of proving an exception to coverage (see 19 G. Crouch, *Crouch on Insurance 2d* § 79:315 at 255 (M. Rhodes rev. ed. 1983)), but "[t]he courts are split on the question whether the

---

5. Our standard of review with respect to summary judgment is plenary. *Waldorf v. Shuta*,

insurer or the insured has the burden of proving an exception to an exclusion." *Fireman's Fund Ins. Cos. v. Ex–Cell–O–Corp.*, 702 F.Supp. 1317, 1328 (E.D.Mich. 1988); *see also* G. Crouch, *supra*, § 79:385 at 338. Compare *New Castle County*, 933 F.2d at 1181–82 (under Delaware law, insurer has burden) with *Fischer & Porter Co. v. Liberty Mutual Ins. Co.*, 656 F.Supp. at 140 (under Pennsylvania law, insured has burden) and *Fireman's Fund Ins. Cos.*, 702 F.Supp. at 1328 (under Michigan law, insured has burden).

We must predict how the Supreme Court of Pennsylvania would decide this question in light of the conflicting authority. For the same reasons already discussed, we predict that the Supreme Court of Pennsylvania would follow the Superior Court's decisions. In *Lower Paxon Township*, 383 Pa.Super. at 571, 557 A.2d at 393, the Superior Court wrote that *Techalloy Co., Inc.* "strongly suggests" that the insured bore the burden of proving that a discharge was sudden and accidental. The *Lower Paxon* court accordingly held (*id.* at 403) that the insured in that case bore the "burden of proving that there was an abrupt discharge, dispersal, release or escape of methane gas." Even if we would not reach the same conclusion were we sitting as a court of common law, we must acknowledge that there are sound reasons for this allocation of the burden of persuasion. *See Fireman's Fund Ins. Cos.*, 702 F.Supp. at 1328. Finding no persuasive evidence that the Supreme Court of Pennsylvania would reach a different result, we conclude that the insured bears the burden of persuasion on this question under Pennsylvania law.

■ Applying these rules to the present case, we agree with the district court that summary judgment was proper. There is of course no dispute that the CERCLA claims were based on pollution and thus fell within the policies' general exclusion. In order to avoid summary judgment, Aardvark was thus required to show—that is, to "point[ ] out to the district court"

(*Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554)—facts that if proven at trial would establish that the CERCLA claims were based on "sudden and accidental" discharges. Aardvark failed to make this showing. On the contrary, as the district court observed, there was abundant evidence in the summary judgment record showing that the discharges occurred over extended periods. App. 6. Thus Aardvark failed to make the showing needed to resist the insurers' motion for summary judgment on the issue of coverage.

■ We likewise hold that the insurers were entitled to summary judgment with respect to their duty to provide a defense. Under Pennsylvania law, "[t]he duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage." *Erie Ins. Exchange v. Transamerica Ins.*, 516 Pa. 574, 533 A.2d 1363 (1987). "If the complaint filed against the insured avers facts which would support a recovery that is covered by the policy, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover." *Id. See also, e.g., Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 760 (3d Cir.1985); *Gene's Restaurant v. Nationwide Ins. Co.*, 519 Pa. 306, 548 A.2d 246, 247 (1988); *Youngman v. CNA Ins. Co.*, 401 Pa.Super. 381, 585 A.2d 511, 514 (1991).

In the present case, the EPA's complaints regarding the Old Mill and New Lyme sites do not "aver[ ] facts which would support" a finding that discharges of pollutants at those sites were "sudden and accidental." On the contrary, both the complaints and related administrative allegations clearly portray a process of pollution occurring over a period of years. For example, the Old Mill complaint alleged that inspectors had "noted approximately 1200 industrial waste drums in various stages of deterioration" and that "[a]nalysis of soil, drum and water samples ... indicated that hazardous drum contents were leaking onto the soil and had contaminated surface and ground water." App. 449. Similarly, the New Lyme complaint alleged that the site had been used for

industrial and commercial waste disposal for more than a decade. App. 429. The EPA's Remedial Action Master Plan for the site stated that many different types of environmental violations had occurred at the site and had "continued throughout the operation of the landfill." App. 487. The Plan stated (*id.*) that "requests ... for elimination of the violations ... were issued during the entire period of operation." Thus, the EPA's allegations plainly referred to long-term pollution, not "sudden and accidental" events.

Moreover, even if it were appropriate to look beyond the allegations of the EPA complaints, it is apparent that the insurers properly concluded after initial investigation that they had no duty to defend. As previously noted, Aardvark has not identified any facts that if proven would show that the discharges at the two sites were "sudden and accidental," and the summary judgment record is replete with contrary evidence.

### IV.

In summary, we hold that, under Pennsylvania law, the district court properly interpreted the pollution exclusion clauses in Aardvark's policies and that the district court properly granted summary judgment in favor of the insurers based on these clauses. We will therefore affirm the district court's decision.