**ARMOTEK INDUSTRIES, INC.,**
Appellant/Cross Appellee in
90–5969,

v.

**EMPLOYERS INSURANCE OF
WAUSAU,** Appellee/Cross
Appellant in 90–6001.

Nos. 90–5969, 90–6001.

United States Court of Appeals,
Third Circuit.

Argued Aug. 5, 1991.

Decided Dec. 31, 1991.

John P. O'Dea (argued), Craig R. Blackman, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., Thomas P. Farnoly, Gruccio, Pepper, Giovinazzi & DeSanto, Vineland, N.J., for appellant.

Janet L.R. Menna (argued), William Gerald McElroy, Jr., Zelle & Larson, Waltham, Mass., for appellee.

Peter J. Kalis, Kirkpatrick & Lockhart, Pittsburgh, Pa., for Westinghouse Elec. amicus-appellant.

Dona S. Kahn, Anderson, Kill, Olick & Oshinsky, Philadelphia, Pa., for Com. of Pennsylvania amicus-appellant.

Thomas W. Brunner, Wiley, Rein, Fielding, Washington, D.C., for Insurance Environmental Litigation Ass'n.

Before MANSMANN and ALITO, Circuit Judges, DIAMOND, District Court.*

## OPINION OF THE COURT

ALITO, Circuit Judge:

An insured sued to recover under general liability insurance policies for costs related to a state-mandated cleanup of toxic waste at an industrial site. The district court granted summary judgment for the insurer, holding that Pennsylvania rather than New Jersey law should be applied, and that under the policies the insured's claims were not covered because, as de-

* Hon. Gustave Diamond, Judge of the United States District Court for the Western District of Pennsylvania, sitting by designation.

fined by the policies, no occurrence caused property damage while the policies were in effect. We will affirm.

## I.

Armotek Industries, Inc. ("Armotek") was incorporated under the laws of New York[1] but its principal place of business has always been in New Jersey. From 1979 to 1985, Armotek was covered by general liability insurance policies issued by Employers Insurance of Wausau ("Wausau"), a Wisconsin corporation. These policies obligated Wausau to pay "all sums which the insured shall become legally obligated to pay as damages because of ... property damage ... caused by an occurrence." The policies defined an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in ... property damage." "Property damage" was defined to include "physical injury to property which occurs during the policy period." The policies also contained a standard pollution exclusion clause that excluded coverage for property damage caused by pollution unless the "discharge, disbursal, release or escape" of pollution was "sudden and accidental."

Armotek procured these policies through the Philadelphia office of an insurance brokerage, Alexander & Alexander, Inc. ("A & A"). As directed by Armotek, A & A canvassed the market and recommended coverage. A & A applied to Wausau in Philadelphia for the Armotek policies. A & A also conducted all negotiations with Wausau in Philadelphia. A & A, however, had no authority to secure coverage without express authorization from Armotek's chief financial officer. After the negotiations were completed, the policies were countersigned by Wausau in its Philadelphia office.

Wausau sent all premium bills to A & A's Philadelphia office; A & A then sent its own invoices to Armotek in New Jersey; Armotek sent A & A's Philadelphia office checks payable to A & A; and A & A then sent its own checks to Wausau's Philadelphia office.

In 1979, after securing its first policy, Armotek acquired the Chambers–Storch Company ("CSC"), which operated a chromeplating plant in Norwich, Connecticut. In 1984, the Connecticut Department of Environmental Protection ("DEP") inspected the Norwich facility, and in 1985 the Connecticut DEP ordered Armotek to remediate pollution at the plant. Armotek sought recovery under its Wausau policies for costs related to the DEP order, but Wausau denied any obligation to provide a defense or indemnification.

Armotek then filed this action in the United States District Court for the District of New Jersey, seeking to recover the costs incurred as a result of the DEP order. Wausau moved to transfer venue to the District of Connecticut, but Armotek opposed transfer, and the district court denied Wausau's motion. In ruling on this motion, the district court considered the choice-of-law question that would have to be decided by the court that ultimately adjudicated the case. The district court noted that neither Wausau nor Armotek was claiming that Connecticut law should apply. The court observed that the parties' choice-of-law dispute centered on whether Pennsylvania or New Jersey was the place of contracting.

In a later opinion, the district court ruled that Pennsylvania rather than New Jersey law would be applied. Applying the choice-of-law rules of the forum (New Jersey), the district court stated that the law of the place of contracting presumptively governs contract disputes, and the court concluded that the contracts in question had been formed in Pennsylvania, because the last act necessary to give the contracts binding effect, Wausau's countersignature, occurred in Philadelphia. The court then considered whether any factors other than the place of contracting were sufficient to require a choice of New Jersey law. The court noted that the policies had been negotiated in Pennsylvania and were "performed" in Pennsylvania, since that is where the premiums were paid. The court

---

**1.** After the events at issue here, Armotek be- came a New Jersey corporation.

acknowledged that the location of Armotek's principal place of business weighed in favor of New Jersey law, but the court concluded that this lone factor was outweighed by the others.

■ On cross-motions for summary judgment, the court granted summary judgment for Wausau. The court observed that Armotek was seeking coverage for expenses incurred as a result of a spill of chromic acid that occurred in 1977. The court rejected Wausau's argument that government-mandated cleanup costs are not "damages" within the meaning of the policies, but the court held that the policies, which as noted were in effect from 1979 to 1985, did not cover property damage caused by the 1977 spill. The court also held that Wausau had not breached its duty to defend because nothing in the order issued by the Connecticut DEP "remotely suggest[ed] a 'sudden and accidental' release of pollution." Finally the court held that Wausau was not obligated to reimburse Armotek for costs incurred by Armotek in suing the prior owner of the Norwich plant and that Wausau had not

violated 42 Pa.Cons.Stat.Ann. § 8371 (1991), which provides relief in cases in which an insurer "has acted in bad faith toward the insured." Armotek appealed,[2] and Wausau cross-appealed, contesting the district court's holding that cleanup costs constitute "damages."[3]

## II.

■ We turn first to the choice-of-law argument pressed by Armotek. Armotek contends that the district court should have applied New Jersey law. Wausau maintains that the district court correctly decided to apply Pennsylvania law. Neither party argues that the law of Connecticut, the site of the Norwich plant, should be applied. We generally decide only those issues raised by parties, *Winston v. Children & Youth Servs.*, 948 F.2d 1380, 1385 (3d Cir.1991); *Beaver Valley Power Co. v. National Eng'g & Contracting Co.*, 883 F.2d 1210, 1217 n. 6 (1989), and accordingly we confine our analysis here to the question whether New Jersey rather than Pennsylvania law should govern.[4]

---

2. We have jurisdiction with respect to Armotek's appeal under 28 U.S.C. § 1291.

3. Wausau's cross-appeal must be dismissed. Ordinarily, a party may appeal only if aggrieved by the district court's *judgment*. While in rare cases a party who has prevailed on the merits may be able to appeal if that party still retains a personal stake in the appeal which satisfies Article III, a non-aggrieved party with no personal stake in the appeal may never do so. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 333–334, 100 S.Ct. 1166, 1171, 63 L.Ed.2d 427 (1980); *Cobb v. Aytch*, 539 F.2d 297, 300 (3d Cir.1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977). Here, the district court granted summary judgment for Wausau, and therefore Wausau is obviously not aggrieved by the district court's judgment. Acceptance of Wausau's argument concerning the meaning of the term "damages" in the policies would not require any alteration of the district court's judgment; instead, Wausau's argument, if correct, would provide an alternative ground on which the district court's judgment could be affirmed. An appellee may make such an argument without filing its own appeal. *Schweiker v. Hogan*, 457 U.S. 569, 585 n. 24, 102 S.Ct. 2597, 2607 n. 24, 73 L.Ed.2d 227 (1982); *Blum v. Bacon*, 457 U.S. 132, 137 n. 5, 102 S.Ct. 2355, 2359 n. 5, 72 L.Ed.2d 728 (1982). As noted below (*see* n. 10, *infra*), however, we find it unnecessary to reach this issue.

4. Amicus curiae Westinghouse Electric Corporation argues that New Jersey choice-of-law rules in environmental coverage actions give substantial weight to the interests of the state in which the cleanup site is located. The Appellate Division's recent decision in *Johnson Matthey Inc. v. Pennsylvania Mfgs.' Ass'n Ins. Co.*, 250 N.J.Super. 51, 593 A.2d 367 (App.Div.1991), held that New Jersey law, rather than the law of the place of contracting, should be applied in a case in which an insured sought to recover for cleanup costs at a site in New Jersey. Other decisions involving New Jersey sites have reached similar conclusions. *See, e.g., Hatco Corp. v. W.R. Grace & Co.*, No. 89–1031, 1991 WL 83126, 1991 U.S.Dist. LEXIS 6479 (D.N.J. May 18, 1991); *Leksi, Inc. v. Federal Ins. Co.*, 736 F.Supp. 1331, 1335–37 (D.N.J.1990). The opinion in *Johnson Matthey Inc.* stated, however, that its "holding is not in harmony with" another Appellate Division opinion, *Westinghouse Elec. Corp. v. Liberty Mutual Ins. Co.*, 233 N.J.Super. 463, 559 A.2d 435, (App.Div.1989). *Johnson Matthey Inc.*, 593 A.2d at 373. Moreover, we are not aware of any decision under New Jersey law extending the rule adopted in *Johnson Matthey Inc.* to a case involving a site outside New Jersey. In sum, it is far from clear that the New Jersey Supreme Court would apply Connecticut law under the circumstances of the present case.

As previously noted, neither Armotek nor Wausau contends that Connecticut law should

Since this is a diversity case filed in the District of New Jersey, we must apply New Jersey choice-of-law rules. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Shuder v. McDonald's Corp.*, 859 F.2d 266, 268–69 (3d Cir.1988). In *State Farm Mutual Automobile Insurance Co. v. Estate of Simmons*, 84 N.J. 28, 37, 417 A.2d 488, 493 (1980), the New Jersey Supreme Court held:

> [T]he law of the place of the contract will govern the determination of the rights and liabilities of the parties under the insurance policy. This rule is to be applied unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield.

*See also First State Underwriters Agency v. Travelers Insurance Co.*, 803 F.2d 1308, 1316 (3d Cir.1986).

The *State Farm* court (417 A.2d at 491) cited with approval *Restatement (Second) Conflict of Laws* § 188(2) (1971), which lists the following factors that should be considered as part of a court's conflict of laws analysis:

(a) the place of contracting;

(b) the place of negotiation of the contract;

(c) the place of performance;

(d) the location of the subject matter of the contract; and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Applying these factors, the district court concluded that Pennsylvania law should be applied in this case. Armotek relies on the same factors, but contends

that they were misapplied by the district court. We hold, however, that these factors weigh strongly in favor of Pennsylvania, rather than New Jersey law.[5]

*Place of contracting.* The "place of contracting is the place where occurred the last act necessary ... to give the contract binding effect." *Restatement (Second) Conflict of Laws* § 188, comment c (1971); *see also Fimbel Door Corp. v. United States Fidelity & Guaranty Co.*, No. 90–1187, 1990 WL 191920 at *7–8, 1990 U.S. Dist. LEXIS 16032 at *19–20 (D.N.J. Nov. 5, 1990); *Crawford v. Manhattan Life Ins. Co.*, 208 Pa.Super. 150, 154, 221 A.2d 877, 880 (Pa.Super.Ct.1966); *Varas v. Crown Life Ins. Co.*, 204 Pa.Super. 176, 183, 203 A.2d 505, 508 (Pa.Super.Ct.1964), *cert. denied*, 382 U.S. 827, 86 S.Ct. 62, 15 L.Ed.2d 72 (1965); *McCrea v. Automatic Heat, Inc.*, 161 Pa.Super. 545, 547, 55 A.2d 564, 565 (Pa.Super.Ct.1947). The parties agree that the Wausau employees' countersignatures on the policies were the last acts necessary to make the policies valid and binding. Brief of Appellant at 16; Brief of Appellee at 23. A. 114–115. *See also* Appleman, *Insurance Law and Practice* § 7133 at 508 (1991). Here, it is not disputed that Wausau employees who countersigned the Armotek policies did so in Philadelphia. Therefore, as the district court concluded, the place of contracting was in Pennsylvania.

Armotek argues that under N.J.S.A. 17:22–6.14 and 6.15 (repealed 1987) the policies had to be countersigned in New Jersey by Wausau's resident authorized representatives. This argument misinterprets the New Jersey statutes. While N.J.S.A. 17:22–6.15 required that the policies be countersigned by an agent licensed in New Jersey, the statute did not state that this

apply. Indeed, the parties have agreed since before the district court's ruling on Wausau's March 1989 motion to transfer venue that either Pennsylvania or New Jersey law should govern. The parties' agreement on this question appears to have substantially affected the proceedings since that point. The district court's denial of Wausau's March 1989 motion to transfer venue appears to have been influenced by the parties' agreement that Connecticut law was inapplicable. Moreover, in ruling on the choice-of-law

question in November 1989, the district court selected between Pennsylvania and New Jersey law and noted that neither party contended that Connecticut law should govern. Under the circumstances, we see no reason to go beyond the issue presented by the parties, i.e., whether Pennsylvania or New Jersey law is applicable.

5. This is a question of law with respect to which we exercise plenary review. *Matter of Resyn Corp.*, 945 F.2d 1279, 1280 (3d Cir.1991).

agent's signature had to be affixed in New Jersey. Under this provision, an agent licensed in New Jersey could countersign by an "attorney in fact." [6] According to an affidavit submitted by Wausau (App.83), that is precisely what occurred here, and Armotek's brief does not dispute this fact. Thus, it is apparent both that the countersignatures were affixed in Pennsylvania and that N.J.S.A. 17:22–6.14 and 6.15 gave Armotek no reasonable basis for believing otherwise.

*Place of negotiation.* The district court stated that A & A negotiated with Wausau on Armotek's behalf and that all of the negotiations between Wausau and A & A occurred in Philadelphia. Armotek does not contend that negotiations with Wausau took place in New Jersey.

*Place of performance.* The place of performance of an insurance contract, in the absence of a clause specifically dealing with the issue, is the place where the premiums are paid. *Equitable Life Assurance Society v. Nikolopulos,* 86 F.2d 12, 14 (3d Cir.1936), *cert. denied,* 300 U.S. 660, 57 S.Ct. 436, 81 L.Ed. 869 (1937). Here, the manner in which Armotek's premiums were billed and paid is undisputed. Wausau sent invoices to A & A in Philadelphia; A & A then sent its own invoices to Armotek in New Jersey; Armotek sent checks payable to A & A; and A & A sent its own checks to Wausau. As the district court concluded, these facts show that Armotek paid the premiums in Pennsylvania. The district court believed that A & A was Armotek's agent; if the district court's view was correct, Armotek's premiums were clearly paid in Pennsylvania, since A & A's checks were drawn and received by Wausau in Philadelphia. Armotek contends that A & A was Wausau's agent for the purpose of

receiving the premiums; if Armotek is correct, its premiums were paid when they were received by A & A in Philadelphia. In either event, the premiums were paid—and the contract was therefore performed—in Pennsylvania.[7]

*The location of the subject matter of the contract.* When the first policy was issued, all of Armotek's facilities were in New Jersey. Armotek subsequently acquired facilities in Pennsylvania and Connecticut, and the latter facility gave rise to the claims at issue here. Under these circumstances, this factor does not weigh substantially in favor of New Jersey law.

*The domicile, residence, nationality, place of incorporation, and place of business of the parties.* Here, Armotek during the time in question was a New York corporation with its principal place of business in New Jersey. Wausau was and is a Wisconsin corporation. The district court correctly reasoned that this factor weighed in favor of applying New Jersey law.

*Other factors.* Armotek relies heavily on several additional factors, but we agree with the district court that these factors have little if any significance for present purposes. Armotek contends that a New Jersey surcharge under N.J.S.A. 17:30A–16 (1991) was imposed on the policies in question. This surcharge applies to any policy, no matter where it is formed, if the policy covers any risk in New Jersey; the amount of the surcharge varies depending on the percentage of the risk located in the state. Thus, this provision merely shows that New Jersey law asserted an interest in the Armotek policies insofar as they covered risks in the state. Since New Jersey choice-of-law rules clearly do not dictate that New Jersey law must apply to every

---

**6.** This case is not controlled by *Wootton Hotel Corp. v. Northern Assurance Co.,* 155 F.2d 988 (3d Cir.), *cert. denied,* 329 U.S. 758, 67 S.Ct. 111, 91 L.Ed. 654 (1946). In that case, applying the parol evidence rule, we deemed that an insurance policy had been countersigned in New Jersey by the insurer's New Jersey resident agent as indicated in the policy itself, rather than in Pennsylvania, as a witness had testified at trial. We did not hold that the signature of the New Jersey agent had to be affixed in New Jersey under the New Jersey statute then in

effect. *See* 155 F.2d at 990 n. 2. Moreover, the statute then in force, unlike N.J.S.A. 17:22–6.15 (repealed 1987), did not expressly authorize countersignature by an attorney in fact.

**7.** In the absence of a provision in a policy to the contrary, the place of performance is where the premiums are received. *Hartford Accident & Indemnity Co. v. Cooper Park Dev. Corp.,* 169 F.2d 803 (3d Cir.1948).

policy subject to the surcharge and since the facility that gave rise to the claims at issue here was not located in New Jersey, we fail to see what relevance this statute has to the choice-of-law question presented in this case.

Finally, Armotek notes that these policies bore a New Jersey "Amendatory Endorsement." As the district court observed, however, these policies also bore special provisions for other states, including Pennsylvania and New York. These provisions show that several states asserted a right to regulate these policies, but none of these provisions demonstrates that any one state had a dominant interest.

In sum, we agree with the district court that a consideration of all of the relevant factors, particularly the place of contracting, shows that Pennsylvania rather than New Jersey law should be applied here. We will therefore consider the pertinent policy provisions as construed under Pennsylvania law.

### III.

The policies involved in this case obligated Wausau to pay "all sums which [Armotek] shall become legally obligated to pay as damages because of ... property damage ... caused by an occurrence." The policies defined an occurrence as "an accident, including continuous or repeated exposure to conditions, which results in ... property damage neither expected nor intended from the standpoint of the insured." The term "property damage" was defined in pertinent part as "physical injury to or destruction of tangible property which occurs during the policy period." In addition, the policies excluded coverage for property damage caused by a "discharge, disbursal, release or escape" of pollution that was not "sudden and accidental." In *Northern Insurance Co. v. Aardvark Associates, Inc.*, 942 F.2d 189 (3d Cir.1991), we predicted that the phrase "sudden and accidental" in this standard clause would be interpreted

by the Supreme Court of Pennsylvania to mean "abrupt" and lasting a short time.

 Under Pennsylvania law, when language in an insurance policy is clear and unambiguous, a court must give effect to that language. *Northern Insurance Co.*, 942 F.2d at 193; *Gene & Harvey Builders, Inc. v. Pennsylvania Manufacturers' Assoc. Ins. Co.*, 512 Pa. 420, 517 A.2d 910, 913 (1986). Putting together all of the elements in the policy provisions noted above, it is apparent that Armotek could not recover for pollution damage under its policies unless:

1) there was an "occurrence," that is, an "accident," which may be a single discrete event, a repeated series of events, or a continuous event;

2) this accident was "sudden," that is, abrupt and lasting only a short time;

3) the accident resulted in injury to property; and

4) the injury to property "occur[red]" during the policy period.

*See also Triangle Publications, Inc. v. Liberty Mutual Insurance Co.*, 703 F.Supp. 367, 370 (E.D.Pa.1989).

 Armotek argues that it may recover for injury to property caused by a 1977 spill of up to 1600 gallons of chromic acid, but we hold that this claim was properly rejected by the district court in granting summary judgment for Wausau.[8] Armotek, which bore the burden of proving coverage (*Northern Insurance Co.*, 942 F.2d at 195), failed to point to facts in the summary judgment record that could establish (*see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)), that the 1977 spill satisfied the fourth element noted above, i.e., that the injury to property "occur[red]" during the policy term. *Triangle Publications, Inc.*, 703 F.Supp. at 370; *Centennial Insurance Co. v. Lumbermens Mutual Casualty Co.*, 677 F.Supp. 342, 346 (E.D.Pa.1987). *See also Riehl v. Travelers Insurance Co.*, 772 F.2d 19, 23 (3d Cir.

---

**8.** Our standard of review with respect to the construction of the insurance policies is plenary. *Northern Insurance Co.*, 942 F.2d at 191 n. 2. Our standard for determining whether summary judgment should have been granted is the same as the district court's. *Waldorf v. Shuta*, 896 F.2d 723, 728 (3d Cir.1990).

1985); *Appalachian Insurance Co. v. Liberty Mutual Insurance Co.*, 676 F.2d 56, 61 (3d Cir.1982). Much, if not all of the injury to the property resulting from the 1977 chromic acid spill must have occurred at the time of the spill or at some other point prior to 1979, when the first Wausau policy took effect. Armotek might have attempted to prove that separable injury to property occurred after 1979 as the chromic acid migrated underground, but Armotek's brief does not appear to make such an argument, and it certainly does not identify any factual support for such an argument in the summary record.[9] Thus, summary judgment against Armotek was properly granted.[10]

Armotek argues that we should apply cases such as *ACandS, Inc. v. Aetna Casualty and Surety Co.*, 764 F.2d 968 (3d Cir.1985), which predicted that the Supreme Court of Pennsylvania would adopt the so-called "triple trigger" or "continuous trigger" approach for determining when bodily injury caused by asbestos exposure occurs. *ACandS, Inc.* held that such bodily injury occurs at the time of exposure to asbestos, at the time of "exposure in residence" (i.e., "'the further progression of injury that occurs even after exposure has ended'" (*id.* at 971 n. 2)), and at the time when the injury is manifested. The holding in *ACandS, Inc.* was informed by "the unique character of the problem created by the policy language in the context of diseases with long latency periods" (*id.* at 973), and we see little if any similarity between *ACandS, Inc.* and the present case. Persons who suffer from asbestos-related diseases are often exposed to asbestos for some period and generally do not manifest symptoms until some later point. Here, a large spill of chromic acid allegedly occurred in 1977. To use the terminology of *ACandS, Inc.*, both "exposure" and "manifestation" occurred at the time of the spill, before the policies took effect. And, as discussed above, Armotek has not pointed to facts that could establish "exposure in residence," i.e., that the property damage caused by the spill progressed further during the policies' terms.

## IV.

Armotek contends that Wausau breached its duty to defend. Under Pennsylvania law the duty to defend is a separate obligation. *Erie Insurance Exchange v. Transamerica Insurance Co.*, 516 Pa. 574, 533 A.2d 1363 (1987). "'If the complaint filed against the insured avers facts which would support a recovery that is covered by the policy, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover.'" *Northern Insurance Co.*, 942 F.2d at 195, quoting *Erie Insurance Exchange*, 533 A.2d at 1363.

Here, the Connecticut DEP order referred to "past chemical storage, handling and disposal activities" at the Norwich facility. As the district court wrote, nothing in the order "remotely suggests a 'sudden and accidental' release of pollution that would trigger Wausau's duty to defend." Moreover, Armotek does not argue that the Connecticut DEP ever suggested that contamination at the site resulted from a sudden and accidental discharge during the policy period; nor does Armotek contend that it informed Wausau or that Wausau had any basis for suspecting that such a discharge occurred during the policy term. Accordingly, we hold that Wausau did not breach its duty to defend.[11]

---

**9.** Armotek's brief states (at 32):
In this case and under Pennsylvania law, contamination to the surface and groundwater began upon initial release of the pollutant, and continues until such time as the pollutants are removed. Thus every policy in effect from the time that Armotek took over control of the Plant in 1979 through to remediation—end affords coverage.

**10.** Since we hold that Armotek cannot recover for this reason, we need not consider whether the district court was correct in holding that state-mandated cleanup costs are "damages" under these policies.

**11.** It follows that Armotek may not recover the costs it incurred in suing the prior owner of the facility. Armotek contends that Wausau's breach of its duty of indemnification forced Armotek to commence that suit. Because we hold that Wausau did not breach this duty, Armotek may not recover these costs.

Finally, we agree with the district court that Armotek has not adduced any evidence that Wausau violated 42 Pa.Cons. Stat.Ann. § 8371 (1991).

## V.

The order of the district court will therefore be affirmed.