**GREAT LAKES CHEMICAL CORPORATION, Appellant–Plaintiff,**

v.

**INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, and First State Insurance Company, Appellees–Defendants.**

No. 23A04–9301–CV–12.

Court of Appeals of Indiana, Fourth District.

Aug. 11, 1994.

Rehearing Denied Oct. 11, 1994.

Russell H. Hart, Stephen R. Pennell, Laura L. Bowker, Stuart & Branigin, Lafayette, for appellant.

Edward O. Roberts, Indianapolis, George M. Plews, Jeffrey D. Claflin, Plews & Shad-

ley, Lawrence A. Vanore, Sommers & Barnard, P.C., Indianapolis, Eugene R. Anderson, Mayda Prego, Anderson Kill Olick & Oshinsky, P.C., New York City, amicus curiae for appellant.

Ann Marie Forte, Siff Rosen & Parker, New York City, Steven S. Lovern, Schreckengast Lovern & Helm, Indianapolis, for appellees.

Victor C. Harwood, III, Edward Zampino, Peter E. Mueller, Harwood Lloyd, Hackensack, NJ, Norman T. Funk, Hill Fulwider McDowell Funk & Matthews, Lee B. McTurnan, Steven M. Badger, McTurnan & Turner, Indianapolis, Laura A. Foggan, John E. Barry, Steven D. Silverman, Wiley Rein & Fielding, Washington, DC amicus curiae for appellees.

CHEZEM, Judge.

## Case Summary

Appellant-plaintiff, Great Lakes Chemical Company ("Great Lakes"), appeals the trial court's grant of summary judgment in favor of appellees-defendants, International Surplus Lines Insurance Company ("ISLIC") and First State Insurance Company ("First State"). We reverse and remand.

## Issues

Great Lakes presents three issues for our review:

I. Whether the "pollution exclusion" clauses contained in the excess liability policies issued by ISLIC and First State excluded coverage for the claims in the underlying lawsuits filed against Great Lakes;

II. Whether ISLIC had a duty to defend Great Lakes in the underlying lawsuits; and

III. Whether the ISLIC and First State insurance policies covered the damage alleged in the underlying lawsuit by the City of Fresno.

1. A total of fourteen insurers were finally named as defendants in Great Lakes' last amended complaint in this action. Great Lakes dismissed

## Facts and Procedural History

Great Lakes brought this action for declaratory judgment seeking a determination that ISLIC and First State [1] had a duty to defend and indemnify Great Lakes in thirteen underlying lawsuits filed against Great Lakes.

In the mid 1960's, Great Lakes began manufacturing and selling pesticide products containing ethylene dibromide (EDB). These products were required to be, and were, registered with both federal and state governments before their sale and application. The EDB products were intended to be used as a soil fumigant pesticide to control nematodes and other pests. The pesticides were applied by injecting them directly into the ground using a tractor driven applicator.

In 1983, the United States Environmental Protection Agency banned the use of EDB as a soil fumigant pesticide. Subsequently, various persons and communities brought actions for damages against Great Lakes claiming soil and groundwater contamination caused by EDB. Great Lakes sought indemnity and defense costs against ISLIC and First State under various policies of excess liability insurance that had been issued from 1971 to 1979. ISLIC and First State denied coverage under the policies. Great Lakes then brought an action for declaratory judgment seeking a determination of rights under the policies. Both sides moved for summary judgment. The trial court granted summary judgment in favor of ISLIC and First State finding as a matter of law that there was no duty to defend or indemnify Great Lakes in any of the underlying lawsuits. Great Lakes appeals.

## Discussion and Decision

### Standard of Review

On appeal from a grant of summary judgment, we consider the same issues and apply the same legal standard as the trial court. *Campbell v. Criterion Group* (1993), Ind.App., 621 N.E.2d 342, *on reh'g.* That is, summary judgment is appropriate only if there are no genuine issues of materi-

twelve of those insurers prior to appeal, leaving only ISLIC and First State.

al fact and the moving party is entitled to judgment as a matter of law. *Perry v. Stitzer Buick, GMC, Inc.* (1992), Ind.App., 604 N.E.2d 613, *aff'd in part, vacated in part*, (1994), Ind., 637 N.E.2d 1282. On review, we may not search the entire record to support the judgment, but may consider only that evidence which had been specifically designated to the trial court. *Keating v. Burton* (1993), Ind.App., 617 N.E.2d 588, *reh'g denied, trans. denied.*

## I.

Great Lakes contends that the trial court erroneously determined ISLIC and First State had no duty to indemnify under the policies. The trial court determined, as a matter of law, that the pollution exclusion clauses of the policies encompassed the claims brought against Great Lakes in the underlying lawsuits, thereby excluding coverage.[2] The pollution exclusion clause contained in the First State and certain ISLIC policies excludes coverage for:

> Bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste material or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

The pollution exclusion clause contained in the remainder of the ISLIC policies provides:

> It is agreed this policy shall not apply to liability for contamination or pollution of land, water, air or real or personal property or any injuries or damages resulting therefrom caused by an occurrence.

■ The provisions of an insurance contract are subject to the same rules of construction as other contracts, and construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Selleck v. Westfield Ins.* (1993),

Ind.App., 617 N.E.2d 968, *trans. denied.* When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. *American Family Mut. Ins. Co. v. National Ins. Ass'n* (1991), Ind.App., 577 N.E.2d 969, *reh'g denied.* If the language of the policy is clear and unambiguous, it must be given its plain and ordinary meaning. *Eli Lilly & Co. v. Home Ins. Co.* (1985), Ind., 482 N.E.2d 467. If the language of the policy is ambiguous, though, the policy should be construed in favor of the insured to further the policy's basic purpose of indemnity. *Id.* An ambiguity exists if the policy is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning. *Property Owners Ins. Co. v. Hack* (1990), Ind.App., 559 N.E.2d 396. An ambiguity does not exist simply because a controversy exists between parties, each favoring an interpretation contrary to the other. *Landis v. American Interinsurance Exch.* (1989), Ind.App., 542 N.E.2d 1351, *trans. dismissed.*

■ When interpreting an exclusionary clause of an insurance policy, the clause must clearly and unmistakably bring within its scope the particular act or omission that will bring the exclusion into play in order to exclude coverage. *Asbury v. Indiana Union Mut. Ins. Co.* (1982), Ind.App., 441 N.E.2d 232. Just as an ambiguous insurance policy is not to be construed to remove from coverage a risk against which an insured intended to protect himself, so too, an exclusionary clause is not to be read so loosely that it would effectively exclude coverage of all operations. *American States Ins. Co. v. Aetna Life & Casualty Co.* (1978), 177 Ind.App. 299, 379 N.E.2d 510. Even where clauses are unambiguous when read within the policy as a whole, but in effect provide only illusory coverage, the policy will be enforced to satisfy the reasonable expectations of the insured. *Davidson v. Cincinnati Ins. Co.* (1991), Ind. App., 572 N.E.2d 502, *trans. denied.*

---

2. The trial court preliminarily determined that the EDB claims in the underlying lawsuits sufficiently alleged an "accident" or an "occurrence," as those terms were defined in the policies, to invoke coverage under the policies' basic insuring clauses. This finding is not challenged on appeal.

The only Indiana case to interpret one of the pollution exclusion clauses applicable here is *Barmet of Indiana, Inc. v. Security Ins. Group* (1981), Ind.App., 425 N.E.2d 201. In that case, a wrongful death suit had been brought against Barmet alleging that the emissions from Barmet's aluminum recycling plant proximately caused the death by reducing visibility on a nearby highway. Barmet's insurer sought a declaratory judgment that coverage for the claim was excluded by the policy's pollution exclusion clause. Judgment was entered for the insurer. Barmet argued on appeal that the pollution exclusion clause was ambiguous and therefore should be construed in its favor. Upon review, this court declined to address whether the clause was ambiguous because the evidence supported the trial court's factual determination that the emissions were not "sudden and accidental." As the release of the emissions did not come within the "sudden and accidental" exception to the exclusion, the policy excluded coverage. Thus, *Barmet* does not provide any guidance for addressing the issue here because that decision did not construe the pollution exclusion clause.

Great Lakes claims that if the pollution exclusion clauses operate to bar coverage, then in this case the insurance coverage would be illusory. ISLIC and First State argue that the pollution exclusion clauses clearly apply to the facts here. ISLIC and First State assert that EDB is a "pollutant" within the meaning of the clauses, citing the EPA report banning its use as a soil fumigant pesticide. They additionally contend that EDB falls within other categories of excluded materials: "toxic chemicals," "liquids," "irritants," "contaminants." They also assert that the application of EDB was a "release," and that it was done so directly upon "land." Thus, ISLIC and First State contend that the language of the pollution exclusion clauses is clear and unambiguous, and when applied to the claims in the underlying lawsuits against Great Lakes, excludes coverage.

■ While a literal reading of the pollution exclusion clauses may appear to apply to the underlying EDB claims, we decline to hold that the clauses exclude coverage in this case. Great Lakes is in the business of manufacturing and selling chemical compounds. The chemical at issue here, EDB, was a soil fumigant pesticide, intended to be applied directly into and upon land. The EDB products claimed to have contaminated the soil and groundwater were used, at the time of application, exactly in the manner intended by Great Lakes and approved by the state and federal governments. Their use and application at that time were entirely legal. EDB was neither a manufacturing by-product or a waste product of Great Lakes. EDB was the actual end-product of the manufacturing process.

Great Lakes, like most manufacturers, purchased liability insurance to protect itself from damage caused by its products. Here, because of the nature of the product and its intended use, the damage caused by EDB was environmental pollution. However, simply because the damage alleged in the underlying lawsuits is environmental damage does not mean that the pollution exclusion clauses should automatically apply to exclude coverage. In this case, the underlying claims against Great Lakes are not in the nature of intentional or negligent environmental pollution; they are essentially product liability claims. To hold that the pollution exclusion clauses bar coverage to Great Lakes for the EDB claims would render the insurance coverage purchased by Great Lakes illusory. We hold that under the facts of this case, the EDB claims against Great Lakes are not excluded by the policies' pollution exclusion clauses.[3]

The trial court's entry of summary judgment on this issue is reversed and summary judgment is ordered entered for Great Lakes.

## II.

■ Great Lakes contends that the trial court erroneously determined ISLIC had no

---

**3.** The parties and the four amicus who filed briefs in this appeal expend considerable discussion on the issue of whether or not the phrase "sudden and accidental," as used within one of the pollution exclusion clauses, is ambiguous. Because we hold that in this case the exclusions themselves do not apply to exclude coverage, we leave the resolution of that issue for another day.

duty to defend Great Lakes in the underlying lawsuits. An insurer's duty to defend, being contractual, is determined by the language in the policies. *Drake Ins. Co. of New York v. Carroll County Sheriff's Dep't* (1981), Ind. App., 427 N.E.2d 1153.

### ISLIC Policies XL1084, XL1089, XL1094, and XL1114

 Great Lakes does not contend that any language in the body of these policies imposes a duty on ISLIC to defend. However, Great Lakes argues that an endorsement[4] attached to the policies provided for the payment of defense costs. That endorsement provided:

It is hereby understood and agreed that in the event of a claim made under this policy, this company shall pay no greater proportion of claim expenses including investigation costs, attorney fees and adjuster fees than the amount of claim this company is called upon to pay bears to the total amount of claim[,] judgment and/or settlement.

Great Lakes contends that the endorsement is unambiguous and imposed a duty upon ISLIC to reimburse defense costs in the proportion that those costs bear to the claim as a whole. ISLIC contends that the endorsement must be read in conjunction with a provision in the body of the policy to determine its meaning. That provision stated:

Notice of an occurrence which appears likely to involve this policy shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. The company at its own option may, but is not required to, participate in the investigation, settlement or defense of any claim or suit against the insured.

ISLIC contends that when these two provisions are read together, the endorsement obligates ISLIC to pay proportional defense

cost only after ISLIC has decided to participate in the investigation, settlement or defense of the claim. However, we disagree that the endorsement was only meant to obligate ISLIC for defense cost after ISLIC decided to participate in the defense. When the endorsement is read in conjunction with the entire policy, we believe that it was intended to supersede those parts of the policy which expressly state ISLIC had no duty to defend. The policies defined "loss" to mean:

sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable, . . . "Loss" does not include investigation, adjustment, defense or appeal costs and expenses . . .

 The policies' definitions of "loss," which excludes defense costs, and the endorsement which obligates ISLIC to pay only its proportional share of defense costs, are inconsistent. Where a policy contains inconsistent and contradictory provisions, that provision most favorable to the insured will be adopted. *Northwestern Mut. Life Ins. Co. v. Hazelett* (1886), 105 Ind. 212, 4 N.E. 582. Therefore, we hold that under these policies, ISLIC has a duty to defend Great Lakes in the underlying lawsuits.

Summary judgment in favor of ISLIC is reversed and summary judgment is ordered entered for Great Lakes.

### ISLIC Policy GP2624

The disputed language under this policy is as follows:

Defense, Settlement and Supplementary Payments

The company shall have the right and opportunity to associated [sic] with the insured in the defense and control or [sic] any claim or proceeding arising out of an occurrence reasonably likely to involve the

---

4. ISLIC argues in its Appellee's Brief that because the trial court did not consider the endorsement when ruling on the cross-motions for summary judgment, Great Lakes contention to this court that the endorsement provides for the payment of defense costs is an allegation of newly discovered evidence, which should be rejected. While it is not clear from the trial court's order that the endorsement was considered when granting summary judgment for ISLIC, a review of the record shows that Great Lakes designated the endorsement to the trial court in its motion for summary judgment. Therefore, it may be considered on appeal.

company. In such event, the insured and the company shall cooperate fully.

Should any occurrence appear likely to exceed the retained limit, no loss expenses or legal expesnes [sic] shall be incurred on behalf of the company without its prior consent. Such consent shall not be unreasonably withheld.

■ Great Lakes contends the policy provided that when a retained limit has been exhausted, Great Lakes was not obligated to obtain ISLIC's consent before incurring defense costs. Great Lakes' argument seems to be that ISLIC's consent is only required where a claim "appears likely" to exceed the retained limit. In this case, goes the argument, the claim did not "appear likely" to exceed the retained limit because the retained limit had been paid out; therefore, the claim was "certainly" to exceed the retained limit, making consent unnecessary.

We disagree with this construction of the consent provision. A natural reading of the provision simply requires that when Great Lakes learns of a claim against itself which may be covered under the insurance policy, and the nature of the claim makes it appear likely to exceed the retained limit of the primary insurer, Great Lakes is to notify ISLIC of the claim before it incurs any defense costs.

■ Even though we disagree with Great Lakes' construction of the consent provision, we are unable to say that ISLIC does not have a duty to defend Great Lakes as a matter of law. The issues of whether and when Great Lakes notified ISLIC of the underlying claims, whether ISLIC declined to defend those claims, and whether ISLIC waived its right to consent to the incurrence of defense costs are genuine issues of material fact not appropriate for resolution on a motion for summary judgment. Under this policy of insurance, summary judgment in favor of ISLIC is reversed.

### III.

Great Lakes contends that the trial court erroneously determined that ISLIC and First State had no duty to defend or indemnify Great Lakes in the underlying lawsuit filed by the City of Fresno. The *City of Fresno* complaint alleged that pesticides containing EDB were used by local farmers and other consumers from 1955 until 1982, and that the EDB had migrated from the soil into the groundwater supply. The complaint also stated that on February 25, 1989, the California Department of Health Services adopted regulations which lowered the permissible concentrations of EDB in drinking water. The City of Fresno filed its action for damages in May of 1990 against Great Lakes and others for the costs of cleaning up the EDB contaminated groundwater.

■ ISLIC and First State had issued excess liability policies to Great Lakes covering the period from August 24, 1971 thru October 1, 1979. The trial court granted summary judgment for ISLIC and First State, finding that no damage had occurred during the policy period because the *City of Fresno* complaint alleged that the City was damaged only after the new groundwater regulations became effective in February of 1989. Great Lakes argues that the trial court erroneously determined that the policies did not provide coverage for groundwater contamination which occurred during the policy period.

The insurance policies provide that ISLIC and First State:

will indemnify the insured for ultimate net loss in excess of the retained limit hereinafter stated which the insured shall become legally obligated to pay by reason of liability imposed by law, or liability assumed by contract, insofar as the named insured may legally do so, for damages because of:

A. Bodily Injury or

B. Property Damage or

C. Personal Injury

to which this policy applies, cause by an occurrence.

"Occurrence" means an accident, or event including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

"Property Damage" means ... physical injury to or destruction of tangible property which occurs during the policy period, ...

Great Lakes contends that the language of the polices is clear: the policies provided coverage for physical injury to property which occurs during the policy period. We agree. The *City of Fresno* complaint alleges that groundwater was contaminated by the EDB pesticides which were applied to the local soil from 1955 to 1982. ISLIC and First State argue that no damage to the City occurred until 1989, long after the policies had expired, when the groundwater regulation was changed. ISLIC and First State, however, confuse damage to the City and damage to the groundwater. The policies provide coverage for damage *to property*, as long as that damage occurs during the policy period. Here, the damage was contamination of the groundwater by application of EDB to the soil. When the City incurred "damages," i.e. the cost of cleanup or of other measures to replenish the contaminated groundwater, is not relevant to when damage to property occurred for purposes of determining coverage under the policies.

ISLIC and First State cite *United States Fidelity & Guar. v. American Ins. Co.* for the general rule that "the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged." (1976), 169 Ind.App. 1, 7, 345 N.E.2d 267, 270. In *USF & G*, a homeowner sued the manufacturer of the bricks used in the construction of his home. The issue presented was, between the many liability insurers of the brick manufacturer over the period, which insurer was obligated to cover the damage to the structure. The insurers agreed with the general rule quoted above, and that when applied to their factual situation provided that the policy in effect at the time of the defective bricks' manufacture was not liable because the damage for which re-

covery was sought was damage to the structure into which the bricks were incorporated.[5] We agree with the general rule as set out in *USF & G*, and its application in that case. We disagree however, with the manner in which ISLIC and First State apply the general rule to the *City of Fresno* case.

When applied to the *City of Fresno* case, the general rule simply holds that the time when the EDB pesticides were manufactured is not the time of the occurrence which triggers coverage, but the trigger for coverage is the time when the complaining party was damaged. Here, the City was damaged when the EDB pesticides were applied to the soil and contaminated the groundwater. The general rule does not hold that the time the City incurred "damages" is the time of the occurrence which triggers coverage under the ISLIC and First State policies.

The trial court's entry of summary judgment on this issue is reversed and summary judgment is ordered entered for Great Lakes.

Reversed and remanded.

RILEY and HOFFMAN, JJ., concur.

**5.** The issue came down to whether the insurer providing coverage when the bricks first began spalling (failing) was entirely liable for the damage to the structure, or whether all insurers after the first instances of spalling were liable in proportion to the number of bricks that spalled during their respective policy period. The court held that the damage to the structure occurred upon the spalling of the first bricks, and that the insurance coverage in effect at that time was entirely liable for the damage.